CRAIG *v.* STATE

[No. 35, September Term, 1957.]

*Decided November 20, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*Milton B. Allen* and *George L. Parrish,* with whom were *Brown, Allen & Watts* on the brief, for appellant.

*E. Clinton Bamberger, Jr., Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General, J. Harold Grady, State's Attorney for Baltimore City,* and *Joseph G. Koutz, Assistant State's Attorney,* on the brief, for appellee.

PRESCOTT, J., delivered the opinion of the Court.

James Howard Craig, a Negro man, twenty-eight years of age, was convicted of common law rape upon an eight year old Negro female in the Criminal Court of Baltimore, and sentenced to death by the administration of a lethal gas. From this judgment and sentence, he has appealed.

He was tried by the Court, sitting without a jury, and the principal question involved is the sufficiency of the evidence relating to penetration to justify a conviction of rape. It is universally recognized, and conceded by the State in this case, that penetration is an essential element of the crime of rape. Penetration, however slight, will sustain a conviction for the same, but the proof thereof must sustain a *res in re;* that is, an actual entrance of the sexual organ of the male within the *labia (majora)* of the pudendum (the external folds of the vulva) of the female organ, and nothing less will suffice. I *Wharton, Criminal Law,* (12th Ed.), sec. 697.

Penetration being an essential element of the crime of rape, it now becomes our duty to examine the testimony and determine whether there was evidence, or proper inferences from evidence, upon which to sustain the finding below that penetration had occurred. *Clay v. State,* 211 Md. 577, 580, 128 A. 2d 634.

The prosecuting witness, an eight year old child, testified that she had been to school on November 29, 1956; that after school she returned home and decided to carry some books to a library a few blocks away; that she was accosted by the defendant, who placed his hand over her mouth and led her, with a knife pointing at her back, to an empty house nearby; that the defendant said nothing to her and she said nothing to him; that he took her upstairs to the "second bedroom" and first he committed an act of cunnilingus with her, and then "he grabs me and * * * started messing with me." When asked how he "messed" with her, she replied, "He stuck his hand up in me and I started crying." She stated that the defendant then pulled off all his clothes, except his underwear, and her "underwears," put her in his bed, and started "messing" with her. She was then asked what the defendant did while he was messing with her, and she replied, "He put his private in my legs." She said this hurt her. She was then asked to point to where he put his privates, and she indicated the region of her privates. She testified that she then told him she had to go to the bathroom, to which he consented. When she came out of the bathroom, the defendant forced her back into the bedroom and started "messing" with her again. She again went to the bathroom and when she came out he again started "messing" with her. Soon thereafter, she told the defendant it was time for her to go home; whereupon he put on his clothes and left, and she left shortly after he did. She returned home, and later that evening told her mother what had occurred. Her mother notified the police, who took her to a place where she was examined.

Doctor Eleanor Scott testified she examined the child at 9:30 p. m. on November 29, 1956, at the police station. Her examination disclosed no marks on the body of the prosecuting witness; the external *genitalia* were reddened; the hymen had a "superficial laceration" at the lower border, which was bleeding; the opening of the hymen admitted "fingertip" only; there was a superficial laceration of the *mucosa* of the vestibule; the discharge taken from the vagina was bloody, but microscopic examination disclosed no sperm; and that she was unable to "put two fingers through the

hymen." She stated her impression was "superficial lacerations of the hymen and the vestibule; partial penetration."

This was all of the material evidence with reference to penetration, except the mother and the police corroborated the presence of blood coming from the child and her clothing.

We do not think there was sufficiently definite testimony as to the element of actual penetration to permit the trial judge to be convinced beyond a reasonable doubt that the appellant was guilty of rape. There is no doubt that his conduct was abhorrent, detestable and repulsive. But he was not tried for this; he was convicted of rape and nothing less than actual penetration will suffice to sustain a conviction thereof. The prosecuting witness' statement that the appellant "messed" with her is not synonymous with, nor necessarily descriptive of, penetration. This is demonstrated by her two answers as to what she meant when she stated the appellant "messed" with her. Her first answer was that "he stuck his hand up in me," and the second was that "he put his private in my legs." What an eight year old child meant by language of this nature is subject to too much conjecture and speculation to form a basis upon which to support a conviction of so grave an offense. Of course, when she is permitted to explain fully what she meant by the terms she used, it may develop with sufficient certainty that there was an actual penetration, but, as the matter now stands, what she meant is too uncertain and indefinite. We further think that the reddened condition of the external *genitalia* is consistent with the child's statement that the appellant performed an act of cunnilingus with her; and the small opening in the hymen (there may, of course, be penetration without the rupture of the hymen) and the superficial laceration of the mucous membrane of the vestibule are consistent with her testimony that "he stuck his hand up in me." We therefore hold that the evidence and proper inferences from the evidence were insufficient to permit the trial judge to be convinced beyond a reasonable doubt that there had been actual penetration; consequently his determination that the appellant was guilty of common law rape was clearly erroneous. Maryland Rule 741 c.

The appellant raised in this Court for the first time an ob-

jection to the admissibility of a statement made by him, having specifically stated at his trial that he had no objection thereto. As there was no objection below and the trial judge did not pass upon its admissibility, we are not called upon to pass upon the same. *Moxley v. State,* 205 Md. 507, 515, 109 A. 2d 370.

*Judgment and sentence reversed, and case remanded for a new trial. The Mayor and City Council of Baltimore to pay the costs.*