ROBERT *v.* STATE

[No. 233, September Term, 1958.]

162

*Decided June 5, 1959.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND and HORNEY, JJ.

*John B. Robins* for the appellant.

*Joseph S. Kaufman, Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General,* and *Alfred T. Truitt, Jr., State's Attorney for Wicomico County,* on the brief, for the appellee.

BRUNE, C. J., delivered the opinion of the Court.

The appellant, Robert E. Robert, was found guilty by a jury on two separate indictments which were consolidated for trial. The first charged him with having carnal knowledge of his stepdaughter, Jacqueline, a female child under the age of fourteen years (and with two lesser offenses which were merged in the greater offense) ; and the second charged him with attempt-

ing to perform an abortion upon the same girl. He was sentenced to fifteen years' imprisonment on the first charge and to three years' imprisonment on the second. He raises two contentions on this appeal: first, that the evidence was insufficient to sustain a conviction on the carnal knowledge case; and second, that evidence obtained by two policewomen listening without his knowledge or consent to a telephone conversation between him and his stepdaughter and others was improperly admitted.

The first contention is based upon the alleged insufficiency of proof of penetration, and for this contention the appellant relies upon the case of *Craig v. State,* 214 Md. 546, 136 A. 2d 243, which was a prosecution for common law rape. There is no doubt, as the *Craig* case holds, that this is an essential element of the crime of rape which must be proved in order to establish guilt. We may assume that it is also an essential element of carnal knowledge (sometimes called statutory rape) under Code (1957), Art. 27, Sec. 462, which makes it an offense to "carnally know and abuse any woman child under the age of fourteen years." In the *Craig* case, however, the only testimony introduced to prove this element was that of an eight-year-old girl. She testified that the defendant had "messed" with her. There was nothing to prove her understanding of the meaning of that term as including penetration. The girl's further explanation of what the defendant had done did not clearly supply the lacking evidence either explicitly or as a matter of reasonably sure deduction. The judgment was therefore reversed and the case remanded for a new trial.

In the instant case we have the testimony of a twelve-year-old girl that she knew what sexual intercourse was, that she knew what caused people to become pregnant and that the defendant had had sexual intercourse with her on several occasions at the motel near Salisbury of which he was the manager and at which she, her mother and the defendant lived. Medical testimony makes it quite clear that the girl had become pregnant before coming to live at the motel in Wicomico County. (Her condition was not shown to have been due to the defendant's action.) There was no effort on either direct or

cross-examination to test her knowledge of the meaning of sexual intercourse.

There is also some testimony by the girl to the effect that the defendant was "messing around" and that the first thing she knew, he stuck something in her. After a careful review of the evidence, we think that this testimony related to the occasion when the defendant was alleged to have used a crochet hook in attempting to perform the abortion and not to any act of sexual intercourse; and we shall therefore not consider it as supporting the charge of carnal knowledge.

We think, however, that the girl's testimony, if believed, was sufficient to sustain the charge of carnal knowledge. There was no need that her testimony be corroborated. *Saldiveri v. State*, 217 Md. 412, 420, 143 A. 2d 70.

In *State v. McCall* (Ia.), 63 N. W. 2d 874, 876, it was said that: "The term itself [sexual intercourse] necessarily includes penetration." In *State v. Diamond* (Nev.), 264 P. 697, a contention very similar to that of the appellant in the present case was made. The court there said: "We think her testimony in this regard is the statement of an ultimate fact, and competent to prove this essential element of the corpus delicti. 'Sexual intercourse,' judicially defined, 'means actual contact of the sexual organs of a man and woman and an actual penetration into the body of the latter.' * * * The failure of the prosecutrix to testify to any physical act showing, or tending to show, actual penetration, is, at the most, the omission of a mere detail comprehended within a term, the meaning of which is common knowledge. That the prosecutrix had such common knowledge may be inferred from her testimony in which she said she knew the meaning of the words 'sexual intercourse.' * * * The prosecutrix testified in direct terms that the appellant had sexual intercourse with her, and that she knew the meaning of the term she used to describe the act. * * * If appellant or his counsel thought that she did not understand what she was talking about, cross-examination could easily have revealed the fact."

See also *State v. Haston* (Ariz.), 166 P. 2d 141; *Osborn v. State*, (Ala. App.), 56 So. 2d 786.

In this state we have recently held that testimony in general

terms in a case of indecent exposure was sufficient to warrant a conviction. *Messina v. State*, 212 Md. 602, 130 A. 2d 578.

We do not think that the fact that the prosecutrix here was only twelve years old at the time she testified, whereas in the cases cited above the witnesses were fifteen (and in the *Diamond* case sixteen), calls for any different result in the instant case. None of the decisions suggest that such a line be drawn. In fact the *Diamond* case cites with approval and quotes from *People v. Preston* (Cal. App.), 127 P. 660, in which the prosecuting witness was twelve years old when the act was committed. (The opinion does not show her age at time of testifying.) We think the proper rule is that while the capacity of children to testify is a matter ordinarily within the discretion of the trial court *(Saldiveri v. State, supra)* their credibility and the weight to be accorded their testimony is a question for the jury to determine. See Wharton's *Criminal Evidence* (12th Ed.), Sec. 971; cf. Wigmore, *Evidence* (1957 Supp.) Sec. 507, pp. 159-60, citing many sex offense cases in which the testimony of children as young as four years of age was admitted in evidence under the discretion rule. We also think the jury was entitled to consider the fact that the prosecutrix in the instant case had been pregnant, not as bearing directly upon the crime charged in the indictment for carnal knowledge, but as a factor to be taken into account in weighing her testimony that she understood the meaning of "sexual intercourse."

We turn now to the second question raised by this appeal—whether the testimony of the two policewomen as to the contents of the telephone conversation overheard by them between the appellant and others at the motel was erroneously allowed into evidence in violation of the Maryland Wire Tapping Act, Code (1957), Art. 35, Secs. 92-99.

The fact that an abortion was attempted on July 20, 1958, is undisputed. There was controversy as to who attempted to perform it. Jacqueline, the prosecutrix, told three different stories at different times. One, which she said the defendant had instructed her to tell, was that she had made the attempt herself; a second, which she said she thought up herself was that her mother had attempted it; and the third, which she insisted at the trial was true, was that the defendant had attempted it.

In this she was supported by her mother, and that is the version which the jury evidently believed.

The attempted abortion on July 20th was not successful, and the crochet hook used in the attempt could not then be removed from the child. As a result, she was taken to a hospital in Salisbury the next day and there passed both the crochet hook and a dead fetus. The Maryland State Police were notified and an investigation was begun. A few days later—on July 25th—the defendant left the motel and visited several places in the general vicinity of Salisbury, one of which was Delmar, Delaware. From that point he made a telephone call to the motel, during which he spoke with Jacqueline and some others who were at the motel. He later returned to the motel and was arrested when he did so.

While the defendant was away from the motel a group gathered there which included Mrs. Robert, her mother, her sister, her daughter Jacqueline, and the State's Attorney for Wicomico County, a trooper of the State Police, two policewomen who were members of the Abortion Squad of the Baltimore City Police Department, and a Mr. Davis who was employed on a part time basis as night clerk at the motel. The defendant had telephoned to the motel earlier in the day and another call from him was expected. Arrangements were made by the State's Attorney with Mr. Davis for police representatives to listen to the conversation when the expected call came in. These arrangements were carried out and the two policewomen tooks turns listening to the conversation through a headset which was connected by pressing a key on the motel switchboard. At the trial each of them testified, over objection, with regard to the substance of the conversation which she had heard. Each of them had made notes of the conversation shortly after it occurred, and each of them made use of her notes in testifying. It is not necessary to detail the whole conversation as reported. The first policewoman testified that the "male voice" inquired of Jacqueline whether she had told the police anything, that she said she had not done so, and that the defendant said to her: "Well, don't tell them anything, because they will take you away from me." At the end of the conversation he was also quoted by the other policewoman as

saying to Jacqueline: "Well, don't tell them anything at all about me, Baby, and I will be home in a little while. Just wait until I get there."

The State suggests that even if it was error to admit this evidence it was not prejudicial to the appellant since in the conversation overheard and testified to he had not admitted any material fact necessary to prove either of the charges in the case. We think this view oversimplifies the matter. The three major witnesses in the case—the appellant, on one side, and his stepdaughter and his wife on the other,—told diametrically opposite stories as to who committed the abortion; and both Jacqueline and Mrs. Robert admitted having lied to the authorities at some stage of the proceedings during the investigation. As for the carnal knowledge case the jury had only the word of Jacqueline against the denial by the appellant. Credibility was therefore a prime issue in both cases. Bearing in mind that the appellant had earlier in the case denied on the stand that he had made the very statements later attributed to him by the two policewomen who overheard his conversation, and also bearing in mind a natural inference which might readily be drawn from a statement such as "Well, don't tell them anything at all about me, Baby," we cannot say that appellant was not prejudiced in both cases by the admission of this evidence with regard to the telephone conversation.

The State contends that the appellant objected to the evidence obtained from the telephone conversation solely on the ground that the defendant was not identified as the person making the call and did not raise any question based upon the Wire Tapping Act. That appears to be true as to the first time the objection was raised, but no ruling was then made on the objection and the evidence did not come in at that time. Instead, the first policewoman witness, who was then on the stand, was temporarily withdrawn and Mr. Davis was recalled in an apparent effort to identify the defendant as the caller. The first policewoman witness was then recalled and a question with regard to the purport of the conversation was again objected to. No ground for the objection was assigned at that time, no request to state the ground of objection was made, and the objection was overruled. The testimony of the second

policewoman as to the telephone conversation was also objected to without specification of any ground therefor, no statement of the ground was requested and the objection was overruled. Rule 522 d 1 of the Maryland Rules provides that "Unless requested by the court, it is not necessary to state the grounds for objections to evidence." See also Rule 522 b. It may be that at the time of the objections which were overruled the defendant was still relying upon lack of identification as the basis for the objections, notwithstanding the effort to identify him as the caller through Mr. Davis' additional testimony (which was not as clear as it might have been on this very point). However, we do not think it clear that the subsequent objections were limited to lack of identification, and we are of the opinion that the wire-tapping objection is available on appeal under Rule 522 and that its consideration is not barred under Rule 885.

The Maryland Wire Tapping Act was enacted by Ch. 116 of the Acts of 1956, and constitutes §§ 92 to 99, inclusive, of Article 35 of the 1957 Code. It differs in a number of respects from § 605 of the Federal Communications Act, though it doubtless is based upon the same general policy. Its origin and legislative history are fully reviewed in Judge Hammond's opinion in *Manger v. State,* 214 Md. 71, 133 A. 2d 78.

The State, which relies heavily upon *Rathbun v. United States,* 355 U. S. 107, suggested in oral argument that this case is controlled by the Federal statute, since the call here involved was interstate. The latter circumstance does not seem controlling, since the Federal statute is applicable to intrastate as well as to interstate communications. *Benanti v. United States,* 355 U. S. 96. We do not understand that the Supreme Court decisions hold that the Federal statute has completely occupied and so preempted the field. On the contrary, *Schwartz v. Texas,* 344 U. S. 199, holds that evidence obtained in violation of the Federal Act may be admitted in a State prosecution if the State law so permits. Of course, to the extent of any conflict between State and Federal regulations, the latter would prevail under the Supremacy Clause. Here we find no conflict; the State Act simply excludes evidence obtained in violation of the state statute, which would otherwise

be admissible *(Schwartz v. Texas, supra)* notwithstanding the Federal Act.

The Federal Act is concerned with the interception and disclosure of telephonic (and telegraphic) communications. In the *Rathbun* case, listening to a telephone call by police on an extension telephone, not installed for that purpose, done at the request of the recipient of the call, was held not to constitute an interception within the condemnation of that statute. An interesting discussion of wire tapping questions under the Federal Act will be found in an article by Bradley and Hogan, entitled "Wiretapping: From Nardone to Benanti and Rathbun," 46 Georgetown Law Journal 418. See also an annotation in 2 L. Ed. 2d 1603, 1607-1612.

In the instant case there is no showing of consent by any party to the telephone conversation to the police listening in. Perhaps the consent of the telephone subscriber who was the owner of the motel might be inferred from the participation of the night clerk, but the case is materially different from *State v. Giardina* (N. J.), 142 A. 2d 609, where a subscriber's switchboard operator listened in on telephone conversations for the purpose of protecting the subscriber's business against thefts.

The real problem before us, as we see it, is the interpretation and application of the Maryland statute, which, in some of its provisions hereafter mentioned, differs materially from the Federal Act. References below to sections will, unless otherwise stated, be to sections of Article 35 of the Maryland Code (1957).

Section 92 contains a declaration that the right of the people to be secure against unreasonable interception of telephonic and telegraphic communications shall not be violated, and a declaration that the interception and divulgence of a private communication by any person not a party thereto is against public policy and shall not be permitted except by court order in unusual circumstances to protect the people. This section concludes with a further declaration of public policy "that detection of the guilty does not justify investigative methods which infringe upon the liberties of the innocent." Subsequent sections undertake to implement the policies declared.

Section 93 (a) provides that "[e]xcept as otherwise provided in § 94 of this subtitle or subsection (b) of this section, no person shall:

(1) [o]btain or attempt to obtain the whole or any part of a telephonic or telegraphic communication to which such person is not a participant by means of any device, contrivance, machine or apparatus, whether electrical, mechanical, manual or otherwise, unless consent is given by the participants. [or]

(2) [t]amper with the wires, connections, * * * circuits, lines or other equipment or facilities of a telephone or telegraph company over which messages are transmitted with the intent to obtain unlawfully the contents of a telephonic or telegraphic communication to which such person is not a participant." It will be noted that these prohibitions are directed against obtaining, attempting to obtain, or tampering with equipment with intent to obtain, the contents of a telephonic or telegraphic communication.

The exception to the prohibitions of subsection (a) contained in subsection (b) of Section 93 are not here material.

The exception set forth in Section 94 is that an *ex parte* order for the interception of a telephonic or telegraphic communication may be issued by a judge of any trial court of the State upon the verified application of the Attorney General or a State's Attorney setting forth facts generally similar to those required for the issuance of a search warrant under Code (1957), Article 27, Section 551.

Section 97 provides that "[o]nly evidence obtained in conformity with the provisions of this subtitle shall be admissible in evidence, and then only in a prosecution for the crime or crimes specified in the court order, in the circuit courts of this State or in the criminal courts of Baltimore City."

Unless some such question as the sufficiency of the title of the statute under Section 29 of Article III of the Maryland Constitution were in issue—and no such question has been raised—it would seem to make little difference whether the conduct proscribed by Section 93 (a) should be called an interception or not. The pertinent inquiry under Section 97 is whether the challenged evidence was obtained in conformity with or in contravention of, the provisions of the Wire Tapping

Act, specifically Section 93 (a) (1). Here we think it clear that the headset used by the police was an electrical "device, contrivance, * * * or apparatus," that they used it to obtain, or to attempt to obtain, the whole or a part of a telephonic conversation to which they were not participants, and that they did so without the consent of *all* of the participants. That the consent of all participants is required, and that the consent of less than all is insufficient (in the absence of an interception order) is clear from the terms and legislative history of the statute. The requirement for the consent of "the participants" was substituted by an amendment to the bill for that of "at least one of the participants." See *Manger v. State, supra.* The terms of our statute as to obtaining the contents of a telephonic communication and as to the consent of all participants are so different from the language of the Federal Act that we think that the *Rathbun* case is inapplicable.

We think that the evidence obtained by listening in was not obtained in conformity with the provisions of the subtitle dealing with wire tapping and, consequently, that under Section 97 of Article 35 it was not admissible in evidence.

The judgment will accordingly be reversed and the case remanded for a new trial.

> *Judgment reversed and case remanded for a new trial; the costs of this appeal to be paid by the County Commissioners of Wicomico County.*