GREEN *v.* STATE

[No. 185, September Term, 1965.]

*Decided June 6, 1966.*

The cause was argued before HAMMOND, HORNEY, MARBURY, OPPENHEIMER and BARNES, JJ.

*Jack E. Richards* for appellant.

*David T. Mason, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, Charles E. Moylan, Jr.* and *Edward J. Angeletti, State's Attorney* and *Assistant State's Attorney,* respectively, *for Baltimore City,* on the brief, for appellee.

MARBURY, J., delivered the opinion of the Court.

Appellant Vernon L. Green was brought to trial under an indictment which charged him in the first count with rape of one Beverly Alston and in the third count, based on the facts set forth in the first count, with common law assault on the same victim. The case was heard before Judge Dulany Foster, sitting without a jury, in the Criminal Court of Baltimore, and the defendant-appellant was found guilty on both the first and third counts. Judge Foster imposed a sentence of five years in the Maryland Correctional Institution under the first count, and two years in the same institution under the third count, both sentences to run concurrently.

On this appeal the appellant raises two questions: (1) Was the evidence legally sufficient to support the verdict of the trial court on the first (rape) count, and (2) did the offense of assault become merged into that of rape.

On March 1, 1965, at about 6:30 in the evening, Vernon Green was visited at his home by a male friend, one Carlton Jones, the latter being accompanied by the eighteen year old prosecuting witness, Beverly Alston, whom Green had never met before, and Beverly's girl friend, Patricia Thomas. Green was then joined by another male friend, and the five youths proceeded to talk and listen to phonograph records. The group disbanded at about 9:00 p.m., but they all agreed to meet soon thereafter at a downtown Baltimore restaurant.

After the party had regrouped at the designated restaurant, apparently at about 10:00 p.m., Carlton Jones recruited a male by the name of Bell who drove them out to an Elks Home. The defendant-appellant went into the Home while the others remained in the car and he emerged some time later in the company of several male companions, who, along with Green squeezed into Bell's vehicle—the total occupants of which then numbered nine boys and the two girls.

After driving around for about an hour, it was decided, pursuant to Bell's suggestion, that the group should all repair to Bell's residence at 2122 Herbert Street. After arriving at the Bell home, at about 12:30 a.m. (March 2, 1965), records were played and some of the group sang songs.

According to the testimony of Beverly Alston the following events then transpired: After Beverly observed her girl friend and Carlton Jones depart for one of the upstairs bedrooms, she decided to go upstairs to use the bathroom facilities. Unaccompanied, she ascended the stairs and located the bathroom which was within a back bedroom. When she came out of the bathroom into the bedroom Green stood before her with his penis in his hand; he grabbed her and forced her onto the bed; she screamed; the defendant pulled her hair, then choked her and threatened to kill her if she screamed again; a long struggle then ensued and the defendant forced her legs apart and against her will inserted his penis into her vagina. She testified that while the defendant was on top of her Bell came into the bedroom and talked to Green but she did not ask for Bell's assistance in repelling the attacker because (1) she did not feel that Bell would be likely to come to her aid if she so requested, and (2) she was afraid of the defendant Green. Green asked

Bell to leave the room and when he refused, the defendant got up and left the bedroom.

Beverly Alston further testified that she then went downstairs but that no one was there except Bell, who had followed her; she asked Bell to unlock the front door so that she could go outside to vomit, and when the door was opened she fled to the nearby abode of her friend, one Bernice Mason. Miss Mason testified that the prosecutrix immediately reported to her that the "boy that I was with tonight * * * almost choked me to death" and that he had "tried" to rape her. Police were immediately summoned and the defendant was placed under arrest.

Dr. Boggio, a medical doctor employed by the Baltimore City Police Department, who examined the prosecutrix four hours after the alleged rape occurred, testified that his examination disclosed a faint bruise forming on the girl's neck, that her hymen was "relatively intact" but he observed a small area of fresh bleeding from a small break in the hymenal ring. He testified that there had not been a complete penetration of the hymen but there "could possibly have been a partial penetration," inasmuch as the "hymen was dilated to admit one finger."

At his trial, Green's defense was that he had the consent and full cooperation of the prosecutrix when they were engaged in the act of sexual intercourse. He testified that he had become friendly with Beverly Alston during the hours he had been with her before his arrest, and that when they arrived at Bell's residence she had consented to go up to the bedroom with him. In a written statement taken immediately after his arrest, which was introduced into evidence by the State without objection, and in his oral testimony before the court, Green admitted inserting the head of his penis into the prosecutrix's vagina, but he specifically denied that he had choked, threatened or forced her in any way to have such relations with him. He testified that he and the prosecutrix were interrupted "three or four times" by Bell while in the bedroom, and that after the last interruption he (Green) left and went over to the adjoining bedroom to talk to Carlton Jones and Patricia Thomas. Green testified that after about fifteen minutes in the other bedroom, he heard Beverly Alston scream (from downstairs) for his help; he asked

what was the matter and Bell was heard to reply "nothing"; he did not bother to further investigate, and about fifteen minutes later he heard the front door slam. He then went downstairs and Beverly Alston was gone. Green theorized that the reason that the prosecutrix accused him of rape was because he had not come to her aid when she had called for him.

Patricia Thomas, who was called by the State, but in retrospect was by no means a friendly witness for it, testified that she never heard Beverly cry for help while the latter was in the back bedroom with Green; that while the two were in the back bedroom she saw Bell, as well as two other males, whom she was unable to identify, enter that room several times; that she later, while Green was chatting with her and Jones in the front bedroom, heard Beverly scream for help from downstairs.

Besides the defendant himself, the defense produced one Calvin Williams, who, like the defendant, was the possessor of an extensive criminal record. Williams testified that he was in the group at the Bell residence and that at one point in the evening he had gone upstairs and observed the defendant and Beverly sitting on the bed engaged in conversation, and that in his opinion Beverly could have gotten up and walked out of the open door if she had wanted to. Carlton Jones was also called to testify for the defense and he reiterated in all material aspects the testimony of Patricia Thomas.

The appellant contends that the evidence was insufficient to support a guilty verdict on the rape count because (1) there was insufficient evidence of penetration, and (2) two of the State's own witnesses (Patricia Thomas and the prosecutrix) told conflicting stories. Appellant's first point is without merit since it is obvious that the defense of consent to the intercourse, which was made in the court below, and the "no penetration" argument made here on appeal are manifestly inconsistent. In any event, the appellant stresses the testimony of Dr. Boggio to the effect that the prosecutrix's hymen was not ruptured when he examined her. But this testimony is immaterial inasmuch as it has never been necessary that the victim's hymen be ruptured in order that the element of penetration be proven. See *Craig v. State,* 214 Md. 546, 549, 136 A. 2d 243. In the light of the prosecuting witness's testimony, plus the defendant's

own admissions, there can be no doubt that the element of penetration was proven. Appellant's second point is based upon the fact that much of a State's witness's (Patricia Thomas') testimony tended to support the defendant's version of the events which transpired in the Bell home rather than Beverly Alston's. Although the State could not impeach its own witness, it was by no means absolutely bound by her testimony to the exclusion of the testimony of the prosecutrix. It was for the trier of the facts to weigh the testimony of Patricia Thomas and to determine her credibility (see *McKenzie v. State,* 236 Md. 597, 603, 204 A. 2d 678) and his determination of such issues will not be disturbed on appeal.

In *McCray v. State,* 236 Md. 9, 15, 202 A. 2d 320, this Court used the following language which is also apposite here:

"For this Court to reverse a judgment entered in a case tried by the lower court without a jury, it must be shown that there was no legally sufficient evidence, or proper inferences therefrom, from which the court could find the accused guilty beyond a reasonable doubt."

Here there was such legally sufficient evidence of the crime of rape based on the testimony of the prosecutrix alone, which as a matter of law need not be corroborated. *Johnson, Etc. v. State,* 238 Md. 528, 536, 209 A. 2d 765. Although Green denied that he coerced Beverly Alston to have sexual intercourse with him, the court was, of course, under no obligation to believe him. *Spencer v. State,* 235 Md. 129, 200 A. 2d 643; *Ponder v. State,* 227 Md. 570, 177 A. 2d 839.

Appellant's second contention, which is that the crime of assault merged into the crime of rape, has merit. The State in its brief and oral argument concedes the correctness of this contention. Most jurisdictions, including Maryland, have abolished the common law doctrine of merger and the true test under the modern concept of merger of offenses, is whether one crime necessarily involves the other. *Bennett v. State,* 229 Md. 208, 182 A. 2d 815; *Veney v. State,* 227 Md. 608, 177 A. 2d 883. The evidence in the instant case shows that the two crimes in question were not separate and distinct and that the facts used

to establish the lesser offense of assault were essential elements in establishing the greater offense of rape, and thus the assault was merged into the rape. See *Tucker v. State,* 237 Md. 422, 206 A. 2d 691; *Marks v. State,* 230 Md. 108, 185 A. 2d 909; *Bennington v. Warden,* 190 Md. 752, 59 A. 2d 779.

The verdict and judgment on the first count will therefore be affirmed, but the verdict and concurrent two year sentence on the third count will be vacated.

> *Judgment as to count one affirmed.*
> *Judgment as to count three vacated.*
> *Three-fourths of the costs to be paid by the State and the remaining one-fourth by the Mayor and City Council of Baltimore.*