## JOHN WILLIAM SIMMS v. STATE OF MARYLAND

[No. 1609, September Term, 1981.]

*Decided September 14, 1982.*

The cause was submitted on briefs to ▮MacDaniel, Weant and Bishop, JJ.

Submitted by *Alan H. Murrell, Public Defender,* and *Richard T. Cremin, Assigned Public Defender,* for appellant.

Submitted by *Stephen H. Sachs, Attorney General,*

*Carmina Szunyog, Assistant Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Joseph S. Lyons, Assistant State's Attorney for Baltimore City,* for appellee.

MACDANIEL, J., delivered the opinion of the Court.

On January 20, 1977, in the Criminal Court of Baltimore, the appellant, John William Simms, was convicted of common law rape and use of a handgun in the commission of a crime of violence. From his convictions, which yielded a sentence totaling twenty-five years imprisonment, appellant noted this belated appeal,[1] contending:

> "I. The trial judge committed reversible error by conducting a critical stage of the proceedings in . . . [his] absence.
>
> II. The evidence was insufficient to convict [him] of the crime of rape.
>
> III. The trial judge committed plain error in instructing the jury that the State's burden of proof is advisory only."

Finding no reversible error in the record as it now stands, we shall affirm the judgment of the court below.

On May 14, 1975, at approximately 5:30 a.m., the victim, whom we shall refer to as Christine, was standing on a street corner in Baltimore City waiting for a bus to take her to her place of employment. Suddenly, an individual later identified as appellant approached and "patted" Christine on her "behind." When words were exchanged, appellant produced a gun and directed Christine to walk with him. Eventually the pair made their way to the rear of a house located

---

1. On March 14, 1977, appellant filed a *pro se* Notice of Appeal to this Court from his convictions. On July 1, 1977, however, that appeal was dismissed for failure to timely transmit the record, as required by Maryland Rule 1025. As a result of Post Conviction Proceedings in the Criminal Court of Baltimore, appellant was able to convince the court that the procedural default referred to above was appellate counsel's fault and that "basic fairness and due process require[d] the granting of a belated appeal." An order to that effect was issued on December 16, 1980.

at 3623 Fairview Avenue, where the appellant forced Christine under a porch, pointed his gun at her, and told her to remove her pants. After Christine had complied with this demand, appellant proceeded to unzip his pants, expose himself, and got "on top of [Christine], and . . . rolled a few times. . . ." At other points in her testimony Christine was more specific, stating that appellant "raped" her.

Following the attack, and after going home to inform her husband of the incident, Christine was taken to Mercy Hospital for treatment. A report of the examination done at that time (which was stipulated to by the defense and admitted into evidence as State's Exhibit #3), reveals that there was no evidence of either "General Physical Trauma" or "Recent Vaginal Penetration." There was, however, "Evidence of Semen or Sperm in the Vagina," a laboratory study showing the presence of "Non-motile Sperm. . ." The report also indicated that the victim had a "marital" hymen. Another laboratory report (also stipulated to and admitted into evidence), disclosed that "Seminal fluid and Spermatozoa" were found on Christine's clothing, as well.

For the next fifteen months, appellant remained at large.

On January 18, 1977, having been captured the preceding August, appellant came to trial, with the first order of business being jury selection. Inasmuch as there had been previous media accounts concerning appellant, who had been dubbed the "Northwest Rapist," much of the *voir dire* was devoted to determining whether any of the prospective jurors had been prejudicially exposed to such accounts. When several veniremen indicated that they had been exposed to media reports concerning appellant, the court called those individuals to the bench for further questioning. Those veniremen who insisted that they could reach a fair and impartial verdict regardless of what they had read or seen were allowed to remain on the panel, subject to peremptory challenge. The record is unclear as to whether any of these veniremen ultimately served on the jury that convicted appellant or whether counsel for appellant was

forced to expend a portion of his peremptory challenges to exclude those individuals from the jury.

Although the record affirmatively indicates that counsel and the individual veniremen were present at the bench during the individual *voir dire,* the record is silent as to whether appellant was or was not present at the bench; nor does it reveal what may have motivated appellant's absence, if indeed he was absent.

Following the presentation of the evidence and closing argument, the court instructed the jury. Among other things, the court charged the jury:

> "Members of the jury, under the Constitution and law of Maryland, you are the judges of the law as well as the facts. It is within your province to resolve conflicting interpretations of the law and to decide whether the law should be applied in dubious factual situations; however, you do not have unlimited discretion to make new law or ignore or repeal clearly existing law as whim, fancy or compassion might dictate even within the limited confines of a single criminal case.
>
> Any remarks I make regarding the facts and these instructions which I am giving you with respect to the law are advisory only. You are in no way bound by what I may say to you as to either."

At the conclusion of the instructions defense counsel registered no objections.

## I.

Appellant's first contention is that he was denied his right to be present at the bench conferences during which individual jurors were questioned concerning their exposure to news accounts dealing with the "Northwest Rapist." While we concur with the conclusion that these bench conferences were critical stages of the proceeding at which the appellant

had a right to be present, *Haley v. State,* 40 Md. App. 349, 353, *cert. denied,* 284 Md. 744 (1978); *cf. Bunch v. State,* 281 Md. 680 (1978) (dealing with *voir dire* of sitting juror), we cannot conclude, based upon the record as it now stands, that this right was violated to appellant's prejudice.

There are at least three questions at issue here:

(1) was appellant in fact excluded from the bench conferences;
(2) if so, did he validly waive his right to be present; and
(3) if he did not waive his right to be present, was his exclusion harmless error?

As to all of these matters the record before us is either ambiguous or silent. As we have seen, the trial transcript gives no affirmative indication whether appellant was present at or absent from the bench conferences; it does not reveal what may have prompted appellant's absence, if indeed he was absent; it is ambiguous concerning whether any of the potentially prejudiced veniremen actually served on appellant's jury or whether defense counsel was unfairly required to expend a portion of his peremptory challenges to exclude those veniremen not stricken for cause by the court. That being the case, it would be speculative and inappropriate for us to presume anything from such a record. As we observed in *Haley v. State, supra,* it is better to have such matters resolved in the context of post conviction proceedings, where an adequate factual record pertaining to the three issues can be developed.[2]

## II.

Contending that the State failed to elicit any evidence that " 'penetration' occurred during the perpetration of the

---

2. For a concise summary of the rules governing these matters *see* Couser v. State, 52 Md. App. 81 (1982).

alleged [rape]," appellant next argues that there was insufficient evidence to convict him of that offense. We disagree.

Common law rape is "the act of a man having unlawful carnal knowledge of a female over the age of ten years by force without the consent and against the will of the victim." *Goldberg v. State,* 41 Md. App. 58, 64 (1979), quoting *Hazel v. State,* 221 Md. 464, 468-69 (1960). Carnal knowledge, quite simply, means sexual intercourse; and it is universally recognized that a *res in re* — the penetration, however slight, of the female sexual organ by the male sexual organ — suffices to prove carnal knowledge. *Craig v. State,* 214 Md. 546, 547 (1957).

While much has been written concerning the type of evidence necessary to prove penetration, *see e.g.* Annot., *What Constitutes Penetration in Prosecution for Rape or Statutory Rape,* 76 A.L.R. 3d 163 (1977), it is clear that the victim need not go into sordid detail to effectively establish that penetration occurred during the course of a sexual assault. Where the key to the prosecutor's case rests with the victim's testimony, the courts are normally satisfied with descriptions which, in light of all the surrounding facts, provide a reasonable basis from which to infer that penetration has occurred. *See Robert v. State,* 220 Md. 159 (1959) ("sexual intercourse" sufficient); *Smith v. State,* 224 Md. 509 (1961) ("bothered sexually," "intercourse," "molested sexually," and "sex relations" sufficient); *McEntire v. State,* 2 Md. App. 449 (1967), *cert. denied,* 249 Md. 734 (1968) ("sexual intercourse" and "sex relations" sufficient); *Johnson v. State,* 3 Md. App. 219 (1968) ("intercoursed" sufficient). *But compare Craig v. State, supra,* 214 Md. 546 (testimony by eight year old girl that defendant "messed" with her insufficient to establish penetration).

Although we have neither been cited to nor found any Maryland cases which have applied the aforementioned principle to a situation where the victim testified only that she had been "raped," [3] our research discloses that the same

---

**3.** *Compare* Scott v. State, 2 Md. App. 709, *cert. denied,* 249 Md. 733 (1968) (evidence sufficient to establish penetration where victim who had

logic has been applied to similar cases elsewhere. In *King v. Commonwealth,* 183 S.E. 187 (Va. 1936), for example, a married, thirty-two year old woman testified that she had been brutally beaten and "raped," also confirming that her assailant had "intercourse" with her. On appeal from his conviction, her assailant argued, as does appellant here, that there was insufficient evidence of penetration to support his conviction. The court disagreed. Affirming the conviction, it noted that from the circumstances of the attack, it did not

> "require the assistance of a logician or lexicographer to lead the jury to infer that when the prosecutrix said she was raped that she meant anything other than that the defendant had committed an act of sexual intercourse with her."

*Id.* at 189. *See also State v. Moorer,* 129 S.E. 2d 330 (S.C. 1963); *State v. Thomas,* 151 S.E. 2d 855 (S.C. 1966); *Haney v. State,* 242 S.E. 2d 757 (Ga.App. 1978); *State v. Sneeden,* 164 S.E. 2d 190 (N.C. 1968); Clay v. State, 518 S.W. 2d 550 (Tx. Crim. App. 1975).

We find this line of cases to be both persuasive and in accord with the trend in our own cases, which do not require that the victim recount, in sensational detail, her assailant's actions. Where the totality of the circumstances support a reasonable inference that penetration occurred during the course of a sexual assault, we, like the Court in *King v. Commonwealth, supra,*

> "are unwilling to promulgate a rule of law that requires an unoffending female to lay bare the facts of her ravishment to the extent of showing its accomplishment in all its sordid details." *Id.* at 189.

Applying these principles to the instant case, we believe that there was more than enough evidence to sustain appellant's rape conviction. Although Christine's initial testi-

---

been "raped" also testified directly that the defendant had placed his sexual organ "all the way into me. . .").

mony that appellant got "on top of [her], and . . . rolled a few times . . ." is not marked by its clarity, that, combined with the circumstances of the attack, the physical evidence, and her *repeated* references to the fact that appellant "raped" her, plainly and sufficiently established a *res in re.* And the jury could also rationally infer that Christine, a married woman with three children, understood the import of her testimony to that effect.[4]

### III.

Although admitting a "failure to note proper objection," appellant last urges that we find plain error in the trial court's jury instruction that its (the court's) charge was "advisory only." As we refused to take cognizance of a similar issue in *Guardino v. State,* 50 Md. App. 695 (1982), we decline to do so here, as well.

> *Judgments affirmed.*
> *Appellant to pay the costs.*

---

4. We do not suggest that the prosecution in this case did all that it could do to prove the rape and yet avoid the sordid details of the incident.