493 A.2d 364

**Ernest Edward KACKLEY**

v.

**STATE of Maryland.**

**No. 1193, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

June 7, 1985.

Jonathan Scott Smith, Assigned Public Defender of Ellicott City, Baltimore (Alan H. Murrell, Public Defender, Baltimore, on brief, for appellant.

Nicolette H. Prevost, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, M. Kenneth Long, Jr., State's Atty. for Washington County and Laura K. Leizear, Deputy State's Atty. for Washington County, Hagerstown, on brief, for appellee.

Argued before WEANT, GETTY and ROBERT M. BELL, JJ.

GETTY, Judge.

Following a jury trial in the Circuit Court for Washington County, appellant Ernest Edward Kackley was convicted of six counts of sexual offenses:[1] Count II, second degree rape; Count III, first degree sexual offense; Count IV, second degree sexual offense; Count V, third degree sexual offense; Count VI, false imprisonment; and Count VII, assault. Appellant was sentenced to a total of 50 years imprisonment. On appeal, he questions the sufficiency of the evidence to sustain his convictions of second degree rape and first degree sexual offense.

The events giving rise to this appeal occurred on September 18, 1982. On that day the eleven year old victim was approached by appellant, whom she knew, and advised that he had been told by her mother to take her to the store to get some refreshments. The victim entered his truck and was driven to a cornfield in Maryland where the sexual offenses occurred.[2]

The victim testified that when appellant did not turn off onto the road to the store she knew she was in trouble but she said nothing. Although the victim resisted appellant's attempts to undress her by saying "no" and rebuttoning her pants, appellant succeeded in undressing her. He told her to "suck on his thing until it got hard and then jump on it." She complied, "[b]ecause I was scared of him." No threats were made by appellant at that time; however, he did threaten her later in the day. Although she did not know why, the victim testified that she thought she was going to die. The following colloquy occurred at trial:

A. (Crying) So I did that, three or four times I did.

---

1. Count I of the indictment charged first degree rape. The trial court granted appellant's motion for judgment of acquittal as to that count.

2. The abduction occurred in West Virginia.

Q. Okay, then what happened?

A. And he told me that it wouldn't go in and he said he had to stick his finger up in there and I said no. And I told him that when he tried it that it did hurt.

Q. Okay, now what did he try to do?

A. Stick his thing up in my hole. So he tried it and kept on trying it and then he told me that it wouldn't go up inside of me.

Q. Did it hurt?

A. Yeah.

Q. Did you feel it up in your hole or near your hole?

A. Yeah.

Q. And what do you mean by your hole?

A. My Susie.

Q. Okay.

A. And I told him ... I told him that it hurt and he goes "Well, your hole is too little." And he goes, "Since it won't go up in you," he goes "I have to stick my finger up in there." And I told him no. And he goes, "Well," he goes "There's only one way, to get on my lap." And he goes "Suck on my thing until something comes out." So I did that because I wanted to get home and I wanted to see Mom. I did that and he told me and then after I did that I got my clothes back on and he told me to pull up his clothes and button them, so I did that. And then he just sat there and he sat me on his lap and told ... he told me that ... that if I told my Mom that he would kill me and my Mom both if I told her the truth and ... so he sat there and he was I don't know but he just sat there and I was on his lap and he had his hands around my throat and he he had his arms like this and he kept pushing and pushing and then I couldn't breathe any more. So I put my finger down in there

and I told him I said, "Why don't you sleep on this." And I said, "We'll talk about this in the morning." [3]

The examination of the victim failed to reveal the presence of sperm in the vagina. Acid phosphatase, an enzyme secreted by the male prostate gland, was found in the victim's underwear and jeans. The medical examination revealed "a recent superficial abrasion, caused by mechanical trauma,[4] and fresh blood on the posterial aspects of the vaginal opening." The abrasion was described by the doctor as being "at ... the door of the vagina at the bottom side," and "... not in the door."

While acknowledging that all other requirements of the statute have been met by the evidence, appellant concentrates his attack on the evidence of "penetration" adduced by the State. He contends that the testimony of the victim and the medical evidence are entirely unclear and too uncertain to permit the trier of the facts to find beyond reasonable doubt that penetration occurred. We disagree.

■ Penetration is a necessary element of the crime of second degree rape, Md.Ann.Code art. 27, § 463(a)(3); *Smith v. State*, 224 Md. 509, 168 A.2d 356 (1961); *Craig v. State*, 214 Md. 546, 136 A.2d 243 (1957); and "penetration, however slight, will sustain a conviction ... but the proof thereof must sustain a *res in re*; that is, an actual entrance of the sexual organ of the male within the *labia* (*majora*) of the *pudendum* (the external folds of the *vulva*) of the female organ, and nothing less will suffice." *Craig v. State, supra,* citing 1 Wharton, *Criminal Law* (12th ed.), § 697.

■ A brief description of the female genital area, referred to in *Craig,* is in order.

---

**3.** Appellant professed to have no recollection of the events of September 18, 1982.

**4.** The doctor testified that he could not say what caused the trauma.

The *mons pubis* is the fat filled cushion over the anterior surface of the hair triangle. The *labia majora* consists of two rounded folds of adipose tissue extending downward and backward from the *mons pubis*. Within the *labia majora* are two flat, reddish folds of tissue that encase the clitoris; this tissue is clinically known as the *labia minora*.

The *pudenda*, or the external organs of generation, commonly designated as the *vulva*, includes all structures visible externally from the *pubis* to the *perineum* (the area bounded by the *mons* in front, the buttocks behind and the thighs laterally). *Williams Obstetrics*, 16th Ed., Pritchard-McDonald (1980).

Thus, penetration into either the *labia minora* or the vagina is not required; invasion of the *labia majora*, however slight, is sufficient to establish penetration. The proof may be supplied by medical evidence, *Edmondson v. State*, 230 Md. 66, 185 A.2d 497 (1962), *cert. denied*, 372 U.S. 949, 83 S.Ct. 946, 9 L.Ed.2d 974 (1963); *Green v. State*, 243 Md. 75, 220 A.2d 131 (1966); *Smith v. State*, 6 Md.App. 581, 252 A.2d 277 (1969); by the testimony of the victim, *Moore v. State*, 23 Md.App. 540, 329 A.2d 48 (1974), or by a combination of both, *Briscoe v. State*, 40 Md.App. 120, 388 A.2d 153 (1978), *Simms v. State*, 52 Md.App. 448, 449 A.2d 1196 (1982). The proof must provide a reasonable basis for an inference that penetration has occurred. When the evidence is offered through the testimony of the victim, we note that,

"... it is clear that the victim need not go into sordid detail to effectively establish that penetration occurred during the course of a sexual assault. Where the key witness to the prosecutor's case rests with the victim's testimony, the courts are normally satisfied with descriptions which in light of all surrounding facts, provide a reasonable basis from which to infer that penetration has occurred." *Simms v. State, supra*, at 453, 449 A.2d 1196.

■ The evidence in this case includes a combination of testimony by the victim and the examining physician. Dr. Franklin Ross performed a pelvic examination which revealed "superficial abrasions on the posterior aspects of the vaginal opening." Fresh blood was detected in the child's underwear and the abrasions, according to the physician, resulted from "mechanical trauma." Although the source of the mechanical trauma was not described, the victim testified:

> "And I told him ... I told him that it hurt and he goes 'Well, your hole is too little.' And he goes, 'since it won't go up in you I have to stick my finger up in there.' And I told him no ...."

There is a fair inference from this testimony that the appellant's effort to accomplish intercourse was by his penis and not with his fingers or any other object. Finally, the forensic chemist who examined the child's clothing found that the victim's jeans and underwear were positive for acid phosphatase, but not for sperm. The presence of semen, while not conclusive as to whether penetration occurred is, nevertheless, to be considered along with the other evidence.

Appellant lamely suggests that by saying "my hole" and "my Susie" the victim may have meant her rectum. The record, however, is totally devoid of any attempt to commit anal intercourse. This eleven year old did not speak in sophisticated or clinical terms in describing her ordeal. We think, however, that the evidence that appellant attempted, in the victim's words, to "stick his thing up in my hole ... and kept on trying it ..." coupled with the medical testimony of an abrasion "at the door of the vagina" was clearly sufficient to establish penetration of the *labia majora* which is all that the law requires. The jury, therefore, could determine beyond a reasonable doubt that the essential elements of the crime of second degree rape were proved. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

Appellant seemingly relies on *Craig, supra,* where an eight year old stated that the defendant "messed with her" and when asked what she meant by that statement she first said "he stuck his hand in me" and then, "he put his private in my legs." The Court pointed out that what an eight year old child meant by language of this nature was subject to too much conjecture and speculation on which to support a conviction. The reddened condition of the external genitalia, furthermore, was consistent with her testimony that appellant had engaged in an act of cunnilingus, and a laceration of the mucous membrane was consistent with her statement that "he stuck his hand up in me." We think the instant case presents far stronger *indicia* of penetration than was introduced in *Craig.*

Appellant next asserts that the trial court erred in denying his motion for judgment of acquittal as to first degree sexual offense. He argues that there was insufficient proof of an aggravating circumstance to sustain the conviction.

Md.Ann.Code art. 27, § 464(a) defines first degree sexual offense as follows:

§ 464. First degree sexual offense.

(a) What constitutes.—A person is guilty of sexual offense in the first degree if the person engages in a sexual act: [5]

(1) With another person by force or threat of force against the will and without the consent of the other person, and

---

**5.** Md.Ann.Code art. 27, § 461(e) provides: (e) Sexual Act.—"Sexual act" means cunnilingus, fellatio, analingus, or anal intercourse, but does not include vaginal intercourse. Emission of semen is not required. Penetration, however slight, is evidence of anal intercourse. Sexual act also means the penetration, however slight, by any object into the genital or anal opening of another person's body if the penetration can be reasonably construed as being for the purposes of sexual arousal or gratification or for abuse of either party and if the penetration is not for accepted medical purposes.

(i) Employs or displays a dangerous or deadly weapon or an article which the other person reasonably concludes is a dangerous or deadly weapon; or

(ii) Inflicts suffocation, strangulation, disfigurement, or serious physical injury upon the other person or upon anyone else in the course of committing the offense; or

(iii) Threatens or places the victim in fear that the victim or any person known to the victim will be imminently subjected to death, suffocation, strangulation, disfigurement, serious physical injury, or kidnapping; or

(iv) The person commits the offense aided and abetted by one or more other persons.

In order for appellant's conviction to be sustained, there must be proof that appellant engaged in a sexual act with the victim by force or threat of force against her will and without her consent *and* under one of the four aggravating circumstances. Appellant's focus is on the absence of an aggravating circumstance; he concedes the presence of the other elements of the offense.

The only aggravating circumstance that could apply in this case is (iii) requiring that the victim be threatened or placed in fear of imminent death, suffocation, strangulation, disfigurement, serious physical injury or kidnapping. Indeed, the trial court acknowledged as much when it denied appellant's motion for judgment of acquittal at the close of the State's case:

I think there is sufficient evidence of force or threat of force without the consent surely of this eleven year child who was placed in a situation of expecting to just ride with the individual to the store and is then found to be in a situation of being taken all over several counties and states. The physical appearance of the defendant to the young lady together with all his actions and words, I think is sufficient evidence of placing in that child reasonably calculated fear that she was in imminent bodily harm.

Relying on *Mayes v. State,* 50 Md.App. 628, 440 A.2d 1093 (1982), appellant argues that there was no aggravating conduct by appellant or circumstances prior to the occurrence of the sexual acts. He asserts that "[t]he only reference in the victim's testimony to any violence or threatened violence occurred after the sexual activities were completed."[6] The State reports that the circumstances surrounding the victim's kidnapping—appellant's appearance, her transport through several counties and states, the differences in ages, the fact that she was kept out all night[7]—support an inference that appellant threatened or placed the victim in fear of imminent death, suffocation, strangulation, disfigurement, physical injury or kidnapping.

In *Mayes v. State, supra,* we determined the evidence to be insufficient to sustain a conviction for first degree rape where the victim was accosted on a public street, "smacked in the face," and dragged into a wooded area where she was forcibly raped; there was not testimony of the use of a weapon or of any serious injuries. We stated our findings:

> Here, no inquiry was made of the victim regarding her state of mind, i.e., whether she was, in fact, in fear of serious physical injury. Moreover, appellant did not threaten the victim with serious physical injury.... The critical question, as we view it, is whether this evidence, standing alone, was sufficient to constitute placing the victim in fear of serious physical injury as contemplated by the statute. We think not. The statute requires more than the placing of the victim in fear of physical injury generally. It specifically requires the victim to be placed

---

**6.** Appellant mentioned in passing that the aggravating circumstances required for a conviction of first degree sexual offense are the same as those required for conviction of first degree rape, thus implying that granting appellant's motion for judgment of acquittal as to first degree rape warranted a similar ruling as to Count III. He cites no authority for such a proposition and we know of none.

**7.** The evidence showed that the events began about 3:00 in the afternoon in West Virginia and the victim was not returned until the next morning. Appellant and the victim spent the night in the cornfield.

in fear of serious physical injury which, in the context of the statute, means being placed in fear of physical injury analogous to "death, suffocation, strangulation or disfigurement." This was not the case here.

*Id.* at 636, 440 A.2d 1093. On the other hand, in *Brooks v. State*, 53 Md.App. 285, 452 A.2d 1285 (1982), we affirmed a conviction where the victim was attacked at night in her apartment, struck twice in the face and threatened with additional blows if she did not accede to the attacker's wishes and the victim was in a "highly nervous state." Noting that the victim was helpless and at the mercy of the alleged rapist, we found "[t]he blows combined with the threats of continued assaults were ... more than enough to create an actual apprehension of serious and imminent bodily injury."

■ We glean from the cases that the victim's fear must not only be genuine, *Hazel v. State*, 221 Md. 464, 157 A.2d 922 (1960), but it must also be reasonable. *State v. Rusk*, 289 Md. 230, 424 A.2d 720 (1981); *Mayes v. State, supra.* In *State v. Rusk, supra*, the Court of Appeals made clear that "... threats of force need not be made in any particular manner in order to put a person in fear of bodily harm ..." and that the question of the reasonableness of a victim's fear or apprehension is a question of fact for the jury. In *Mayes v. State, supra* [50 Md.App.], at 636, 440 A.2d 1093, we pointed out, with respect to the victim's fear:

"In determining whether appellant placed the victim in fear of serious physical injury, we consider not only the conduct of appellant but the state of mind of the victim."

■ Viewing the totality of the circumstances here presented, we are satisfied that the evidence was sufficient to prove that appellant placed the victim in reasonable fear of serious physical injury. An eleven year old girl, through a ruse, was induced to enter the truck of appellant, a 42

year old man of formidable appearance.[8] She was abducted and driven far from home, into another state, to a cornfield. She testified to fear—fear of appellant and of death. She also testified to wanting to get home and to see her mother. Such fears, considering the age of the victim, the place where the events occurred and the physical appearance of appellant, were not unreasonable. Appellant's subsequent threats to kill the victim and her mother if she told the truth along with appellant's choking the victim, as if to demonstrate one method of accomplishing the deed, lend support to the reasonableness of the victim's fears of serious physical injury. Certainly, the issue was, at the least one for the jury. *State v. Rusk, supra.* We discern no error in submitting the matter to the jury for determination. Furthermore, we believe the evidence sufficient to sustain the verdict. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Tichnell v. State,* 287 Md. 695, 415 A.2d 830 (1980).

JUDGMENTS AFFIRMED.

COSTS TO BE PAID BY APPELLANT.

ROBERT M. BELL, Judge, concurring.

I concur. I write a separate opinion, however, because while I view the evidence of penetration presented by the State to have been sufficient, it was just barely so. I do not agree that that evidence was clearly sufficient.

The victim testified that the appellant *tried* to "stick his thing up in my hole", that she felt pain and that appellant told her "that it wouldn't go up inside of me". Further, no definitive answer was ever elicited to the question whether she felt appellant's penis in her "hole" because that question was asked in conjunction with a second question,

---

**8.** Photographs of appellant as he appeared at the time of the incident were introduced into evidence.

whether she felt his penis near her "hole". Her affirmative response to those two questions, therefore, does not supply clear evidence of penetration. Neither does the presence of acid phosphatase in the victim's panties and jeans supply the necessary link. Finally, the victim when asked to what she referred when she used the term "hole", replied my "Susie". There was no explanation elicited as to which of her bodily openings "Susie" referred. Thus, the evidence from the victim does not support an inference that penetration occurred. *See Craig v. State*, 214 Md. 546, 136 A.2d 243 (1957).

The evidence which tips the scale in this case is that elicited from the medical witness. The doctor testified that there was a laceration "at the door of the vagina". I agree that this evidence, coupled with the victim's testimony as to appellant's attempt to stick his "thing" in her hole, was sufficient to allow the jury to determine that the essential elements of the crime of second degree rape were proved.

Despite the sufficiency of the evidence in this case, I feel constrained to say again, as we said in *Simms v. State*, 52 Md.App. 448, 449 A.2d 1196 (1982), that the prosecution did not do in this case all it could have done to prove the offense and yet avoid the sordid details of the incident. With a few simple questions, the prosecution could have rendered this case a clear, rather than a close, one. It would not have involved going into sordid details to have inquired of the victim what she meant by "Susie"; nor would it have been inappropriate to ask the doctor whether the door of the vagina was within the *labia majora*.

The burden to prove every material element of the offense charged is on the prosecution. That burden must be borne by the prosecution. This court will not relieve it of its burden, even in an egregious case. The prosecution, therefore, should be especially mindful in such cases of its burden and to take great care to meet it.