## HARVEY LEE STEWART *v.* STATE OF MARYLAND

[No. 278, September Term, 1967.]

*Decided July 23, 1968.*

The cause was argued before MURPHY, C. J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Francis X. Gaegler* for appellant.

*Fred Oken, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

Appellant was tried by a jury in the Circuit Court for Prince George's County on an indictment charging rape, assault with intent to rape, and assault and battery. He was found not guilty of rape, but guilty of assault with intent to rape without capital punishment. No verdict was returned by the jury on the assault and battery charge.[1] The court sentenced appellant to twenty years under the jurisdiction of the Department of Correction.

The facts pertinent to a determination of the issues raised on appeal are essentially these: Appellant was operating a taxi cab in Washington, D.C. at approximately 1:00 a.m. on December 27, 1964 when, at a bus terminal, the prosecuting witness, a Captain in the Army Air Force, asked him to transport her to a designated shuttle bus stop in the District in order that she might catch a bus to Andrews Air Force Base. The prosecuting witness testified that she was a stranger to the Washington area and therefore not familiar with the streets; that after they had been riding for a while, she saw a sign indicating that they were entering Maryland and she sensed that something was wrong; that she thereafter tried to jump out of the cab on several occasions but was restrained by the appellant who told her to behave; that appellant parked his cab in a secluded spot, got in the back seat, and pulled her into the back seat with him; that she fought and kicked, but appellant succeeded in partially unclothing her; that by striking the appellant a blow under his chin, she was able to hurt him and thereby succeeded in preventing appellant's penetration of her person; that she then reclothed herself, soon after which appellant said, "I am sick of this nonsense," slammed her to the seat and knocked her unconscious. The prosecutrix further testified that when she re-

---

1. The jury's silence on this count of the indictment is the equivalent of a verdict of not guilty. See *Jenkins v. State,* 3 Md. App. 243.

gained consciousness she found that her clothing had again been removed, and that appellant was kissing her; that she then bit his tongue, after which appellant struck her again and she lost consciousness; that when she again regained consciousness, appellant was in the act of having sexual intercourse with her and to prevent further beating, she agreed to cooperate with him in the intercourse. Afterwards, appellant drove the prosecuting witness to the gates of the Air Force Base. The prosecutrix did not tell the military police at the gate that she had been raped. She was, however, promptly taken to the Base hospital, where she stated that she had been raped.

Appellant testified in his own behalf, admitted that he had sexual relations with the prosecutrix, but claimed that it was with her consent. He testified that at the request of the prosecutrix, he agreed to drive her to Andrews Air Force Base; that on the way, they conversed amicably; that the prosecutrix placed her hand on his thigh; that shortly thereafter, he stopped his cab, they kissed for a time, got into the back seat, discussed the availability of a place to stay for the night, then had sexual relations in the automobile. The appellant further testified that after the intercourse, the prosecutrix became furious when he told her he was going to take her to the Base and then go home. The appellant admitted striking the prosecutrix when she bit his tongue.

I

Appellant contends that the charge of assault with intent to rape, of which he was convicted, merged into the criminal act of rape, of which he was acquitted, and consequently, his conviction for the former offense cannot stand. He urges that since it is uncontradicted that the intercourse did occur, he could not be convicted of assault with intent to rape, at least unless it was shown from the evidence that after initially assaulting the prosecutrix by pulling her into the back seat with the intent to rape her, he then entirely abandoned his intention to commit the greater crime of rape. Appellant claims that there was no evidence to show that he had abandoned his purpose to have intercourse with the prosecutrix and that the entire episode must be treated as one transaction and not as two separate and distinct crimes.

We think the appellant misconceives the nature and applicability of the doctrine of merger. The true test of merger under the modern doctrine is whether one crime necessarily involves the other, *viz.*, when the facts necessary to prove the lesser offense are essential ingredients in establishing the greater offense, the lesser offense is merged into the greater offense. *Tender v. State*, 2 Md. App. 692; *Dunlap v. State*, 1 Md. App. 444. While the doctrine of merger may be applicable under proper factual circumstances to merge a conviction of assault with intent to rape into a conviction for rape, the doctrine applies only to preclude multiple convictions on merged convictions. *Lievers v. State*, 4 Md. App. 219; *Gee v. State*, 2 Md. App. 61. See also *Holtz v. State*, 1 Md. App. 358. As the doctrine is applicable only when there have been convictions on each offense, and as the appellant was not convicted of rape, into which he alleges the assault with intent to rape merged, the doctrine has no application. For these same reasons, we recently declined to merge a conviction of assault with intent to rob into the crime of robbery where the defendant had not been convicted of robbery. See *Bryant v. State*, 4 Md. App. 572.

## II

Appellant next contends that since the evidence showed that the act of intercourse was consummated, the court erred in failing to grant his motion for judgment of acquittal on the charge of assault with intent to rape. We think the motion was properly denied. The evidence was such that the trier of fact might have concluded that the prosecutrix, after being assaulted and resisting for a time, thereafter consented to the intercourse, however reluctantly, (see *Clark and Marshall Crimes*, Sixth Edition, Sec. 11.01) or that there were, in fact, two separate and distinct episodes involved, one of which constituted an assault with intent to rape, but the other of which was not a rape, since the subsequent intercourse was eventually had with the prosecuting witness's full consent.[2] As each count of an in-

---

2. While appellant makes no argument that an acquittal of rape and a conviction of assault with intent to rape are necessarily inconsistent, it is settled that a conviction on one count is not necessarily erroneous because of an inconsistent acquittal on another count. See *Ledbetter v. State*, 224 Md. 271; *Moore v. State*, 3 Md. App. 676.

dictment is regarded as if it were a separate indictment, the inquiry is whether the evidence is sufficient to support a conviction on that count without regard to the disposition of other counts. See *Leet v. State,* 203 Md. 285. Accordingly, we see no error in the court's refusal to grant appellant's motion for a judgment of acquittal on the charge of assault with intent to rape.

## III

Appellant next contends that he was "denied a fair trial by jury and due process of law in the Court's method of handling the deliberation of the jury." More specifically, he maintains that the jury retired to consider its verdict at 4:25 p.m.; that it deliberated until 6:32 p.m., when it sent a note to the court requesting to hear additional testimony; that after the court denied this request, and ascertained that the jury could not reach its verdict by 7:00 p.m., it provided only sandwiches to the jury and not a full meal; that the jury deliberated until 10:37 p.m., at which time the court gave it the so-called "Allen charge" over appellant's objection; and that it was not until 12:05 a.m. that the jury's verdict was returned. On these facts, appellant contends that the jury was weary, had been intimidated by the court's delivery of the Allen charge, that their long confinement had a depressing effect, and that their deliberations were conducted without having the benefit of a full meal.

In *Plank v. Summers,* 203 Md. 552, it was held at pages 554-555 that "no case should be carried on for such a length of time that the judges, jury and lawyers cannot properly function," but that "the widest discretion has been given the trial courts in the conduct of trials and this discretion should not be disturbed unless it is clearly abused." On the record before us, we see no such abuse of discretion, particularly since there was no showing that anyone was weary, hungry, depressed or otherwise adversely affected by the length and circumstances of the deliberation. That the Allen charge as delivered by the court in this case is proper is now entirely well settled in Maryland, both in criminal and civil cases. See *Leupen v. Lackey,* 248 Md. 19.[3]

---

3. The trial judge's Allen charge was as follows:
"You are instructed that there are many cases in which

## IV

Appellant's final contention is that the court erred in admitting evidence of his prior conviction for assault in 1959 since it was done for the purpose of showing a similar act and not for the purpose of impeachment, and since the question propounded by the State's Attorney was whether he was "charged" with that offense, rather than convicted of it. The record does not indicate the purpose for which the question was asked and we cannot assume on the record before us that it was asked for a purpose other than to impeach the appellant's credibility as a witness. See *Wethington v. State,* 3 Md. App. 237. It was developed on further examination of the appellant that he was not only "charged" with the offense, but convicted of it, and paid a $1.00 fine. Under the circumstances, we see no error in the admission of this evidence.

*Judgment affirmed.*

---

absolute certainty cannot be expected. Although the verdict must be the verdict of each individual juror, as a result of his own convictions, and not a mere acquiescence in the conclusion of his fellows, each one of you should examine the question submitted with candor and with a proper regard and deference to the opinions of the others. It is your duty to decide the case, and if you can conscientiously do so; and you should listen with a disposition to be convinced to each other's argument.

"If your views are contrary to those of the vast majority, you should consider whether your views, which make no impression on the minds of so many, equally intelligent jurors, are correct.

"So, you will return to the jury room and deliberate further in the light of these additional instructions."