JOHN GOODMAN *v.* STATE OF
MARYLAND

[No. 87, September Term, 1968.]

---

**3.** Questions raised in proper person by the appellant on his brief have been covered in substance in the above opinion.

*Decided March 4, 1969.*

*Milton B. Allen* for appellant.

*Francis B. Burch, Attorney General, Donald Needle, Assistant Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *David R. Eaton, Assistant State's Attorney for Baltimore City,* for appellee.

ANDERSON, J., delivered the opinion of the Court.

The appellant, John Goodman, was found guilty by the Criminal Court of Baltimore, Judge William J. O'Donnell sitting without a jury, of the following offenses and sentences were imposed as designated:

Indictment No. 1569—assault upon Bernard Burkam (second count) ; five years under the jurisdiction of the Department

of Correction, to run consecutively with the sentence in No. 1570.

Indictment No. 1570—assault with intent to murder Julius Gruber (first count) ; common-law assault upon Julius Gruber (second count) ; ten years under the jurisdiction of the Department of Correction on the first count; two years on the second count, to run concurrently.

Indictment No. 1571 — carrying a dangerous and deadly weapon (a dagger) concealed on or about his person; one year under the judisdiction of the Department of Correction, to run concurrently.

In this appeal the following questions are presented :

1. Was appellant denied due process of law, right to a jury trial, and effective assistance of counsel?
2. Did the offense of assault merge into the greater offense of assault with intent to murder the same person, Julius Gruber?
3. Was the evidence sufficient to convict the appellant of assault with intent to murder?
4. Was the evidence sufficient to find the appellant guilty beyond a reasonable doubt and to a moral certainty?

At trial Julius Gruber, owner of the Manchester Shoe Store in Baltimore, testified that the appellant entered the store at approximately 11 :45 a.m. on Saturday, February 18, 1967, complaining about a pair of rubbers which had been previously purchased and which allegedly leaked. Mr. Gruber and appellant discussed whether the rubbers did leak; Mr. Gruber then told the appellant that if the rubbers leaked over the weekend, on Monday he would refund appellant's money. The appellant insisted that Gruber put that in writing, to which Gruber replied that he did not have the time to put it in writing, but that "when I tell you I'll do it, I will do it," and then walked away. When Gruber was ten to fifteen feet away, the appellant rose from his seat, Gruber heard a click and saw a knife. The appellant ran toward Gruber, holding the knife over his head. Gruber picked up a chair and held it in front of him, the appellant seized the chair from Gruber, knocked Gruber to the

floor and stabbed him. Mr. Gruber was cut on the left little finger and on the upper part of the thigh.

Bernard Burkam, manager of the shoe store, testified that he saw Mr. Gruber on his back on the floor and the appellant standing over him, straddling his body, with a knife in his hand. Mr. Burkham approached the appellant from the side, shouted "Hey, Bud," and reached to grab the appellant away from Gruber. At this point the appellant had the knife raised. The appellant turned toward Burkam and slashed him with the knife, severely cutting his right index finger. Mr. Burkam then ran to the stockroom asking to be taken to the hospital.

Charles R. Duffy, a salesman at the premises, testified that the appellant "hollered at Mr. Gruber that he wanted his money back then and there." Mr. Duffy saw Mr. Burkam running to the rear of the store, bleeding; and saw Mr. Gruber lying on his back on the floor with his knees drawn up, and the appellant standing over him with a knife in his raised hand. Mr. Duffy picked up a stool and the appellant ran out of the store with Mr. Duffy in pursuit.

The appellant testified that he insisted that he either be given a new pair of rubbers or a refund. He stated that Mr. Gruber then said, "I don't have to do anything for you, boy," and "You get out of here." The appellant said heated and vulgar words were then exchanged, that he moved toward Mr. Gruber and that Mr. Gruber then picked up a stool and swung it at him, striking him in the leg. The appellant then "became angry to fight," he and Gruber began "grappling around," and appellant took the knife from his right coat pocket. While the appellant and Gruber were grappling, Mr. Gruber was cut on the finger and hip. The appellant said that then Mr. Gruber slipped and fell to the floor and that he did not recall stabbing Gruber while he was on the floor. He also said that he did not see Mr. Burkam until he seized the appellant by the shoulders from behind and turned him, and that when Burkam turned him, he swung the knife and cut his finger in an attempt to get Burkam away from him.

The knife, which was introduced, was a "locking-blade knife" with a blade approximately three or more inches long, and was found by the court to be not a mere penknife.

After the appellant's arrest, he was confined in the Baltimore City jail. While there, he became emotionally disturbed and upon recommendation by Dr. Joseph R. Liberto of the Medical Department of the City Jail, was ordered transferred to The Clifton T. Perkins State Hospital on March 29, 1967 by Judge J. Harold Grady, Criminal Court of Baltimore. A letter dated July 10, 1967 from the Superintendent of The Clifton T. Perkins State Hospital to Judge Grady states that the appellant "did seem to have some difficulty remembering things in the past . . . but he had been and still remains on high doses of thorazine and this could be slowing him down." [1]

In a letter dated September 11, 1967 to Judge Grady, the Superintendent stated that the appellant "has now been without antipsychotic medication for approximately two months and has maintained his level of remission." The appellant was then arraigned on October 10, 1967, and trial was held on November 6, 1967; sentencing was deferred until January 17, 1968. The appellant made no issue of his mental state or of his treatment at either arraignment or trial, although the fact of his confinement in Perkins Hospital was mentioned at each proceeding and there was brief discussion of his treatment in the hospital after verdict at trial. In a letter dated December 26, 1967 to Judge O'Donnell, the appellant requested a new trial, to be had before a jury, assigning as the reason for his request that he was under the influence of thorazine at the time of trial and was unable to think clearly or to give his attorney certain "valuable information."

At the sentencing hearing on January 17, 1968 Judge O'Donnell stated, and appellant's attorney agreed, that even if the last mentioned letter were treated as a motion for a new trial it was not timely filed. Judge O'Donnell also stated that "at the time of the trial, I was satisfied, myself, that Mr. Goodman voluntarily and intelligently waived a trial by jury." The appellant again stated that he was unable to think clearly because he was under the influence of thorazine and that he was therefore unable to intelligently decide whether or not he wanted a jury trial. The court then sentenced the appellant as indicated above.

---

1. Thorazine is a proprietary brand of chlorpromazine hydrochloride, a tranquilizer.

## I—THE INFLUENCE OF THE DRUG

The appellant asserts that he was denied various constitutional rights because he was under the influence of the drug thorazine at the time of his trial. It clearly appears from the record, which contains transcripts of appellant's arraignment and trial, that no issue regarding appellant's incompetency to stand trial, his ability to intelligently waive a jury trial, or his ability to give his counsel any information relating to the circumstances of the offense or to possible defenses was raised before trial or at trial. These issues are thus not properly before us for review. Maryland Rule 1085. *Cf.* Md. Code, Art. 59, § 7; *Gaylord v. State,* 2 Md. App. 571, 575 (1967).

We note, additionally, that it affirmatively appears that the appellant was not being treated with thorazine for approximately the two months before September 11, 1967 and no factual information or evidence was presented before trial, at trial, or on this appeal which would show or even intimate that the appellant was being treated with thorazine subsequent to September 11, 1967 and prior to his trial some seven weeks later.

## II—MERGER OF OFFENSES

As we indicated in *Stewart v. State,* 4 Md. App. 565, 569, 244 A. 2d 452 (1968):

> "The true test of merger under the modern doctrine is whether one crime necessarily involves the other, *viz.,* when the facts necessary to prove the lesser offense are essential ingredients in establishing the greater offense, the lesser offense is merged with the greater offense."

On the facts of this case, in which there is an identity of victim in each offense here considered, and an identity of time, place, and circumstances of each offense, we believe that the facts necessary to prove the common law assault are essential ingredients in establishing the assault with intent to murder. *Thomas v. State,* 3 Md. App. 101, 238 A. 2d 558 (1968). Thus upon conviction of the greater crime, the lesser crime merged into it and we shall vacate the conviction on the assault count.

## III—SUFFICIENT EVIDENCE—ASSAULT WITH INTENT TO MURDER

Appellant's argument on this point is that the requisite malice was not shown. It is undisputed that Mr. Gruber was stabbed in the upper thigh area. In that area are located part of the gastrointestinal tract as well as the path of the large femoral artery and the femoral nerve. It is also undisputed that the stabbing occurred either while Gruber and the appellant were grappling or while Gruber lay on the floor. A specific intent to kill is not a necessary element for a conviction of assault with intent to murder. An intent to commit grievous bodily harm is sufficient. *McFadden v. State,* 2 Md. App. 725, 727, 237 A. 2d 93; *Lawrence v. State,* 2 Md. App. 736, 738, 237 A. 2d 81. *Fitzgerald v. State,* 5 Md. App. 558, 563, 248 A. 2d 667. From all of these circumstances we think that there was sufficient evidence or proper inferences therefrom, from which the finder of fact could properly conclude that there was an intent to commit grievous bodily harm. We cannot say that the lower court was clearly erroneous on this issue. Maryland Rule 1086.

## IV—SUFFICIENT EVIDENCE—IN GENERAL

On this point the appellant's brief contains a one sentence bald allegation that the evidence is insufficient to convict beyond a reasonable doubt as required by Maryland law. This does not conform to Maryland Rule 1031 (c) (4). In any event, it suffices to say that the record discloses ample evidence to sustain the convictions. With respect to the assault with intent to murder count, the assault was proved as was the requisite intent, see our discussion in part III, *supra.* With respect to the assault on Mr. Burkam the appellant admitted that he swung the knife at Burkam in an attempt to repel him, and cut him on the finger. With respect to the concealed weapon count, the knife was shown to be a locking-blade knife which the court could clearly find did not constitute a "penknife",[2] and the appellant admitted that it was in his pocket. We hold that there was sufficient evidence adduced, or proper inferences

---

2. See Md. Code, Art. 27, § 36, the concealed weapon statute, which excepts "penknives without switchblade."

therefrom, from which the court could fairly be convinced, beyond a reasonable doubt, of the appellant's guilt, and we cannot say that the court was clearly erroneous. Maryland Rule 1086.

> *Judgment affirmed as to conviction under second count Indictment No. 1569; judgment affirmed as to conviction under first count Indictment No. 1570; judgment affirmed as to conviction under first count Indictment No. 1571; judgment vacated as to conviction under second count Indictment No. 1570 as merging into first count Indictment No. 1570.*