# FRANK THAYER BOBLITS *v.* STATE OF MARYLAND

[No. 345, September Term, 1968.]

*Decided August 5, 1969.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Thomas M. O'Malley* for appellant.

*Thomas N. Biddison, Jr., Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Benjamin R. Wolman, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

Appellant was indicted in February, 1967, for housebreaking, larceny and receiving stolen goods. In May, 1967, he was tried before a jury which returned a verdict of (1) not guilty of housebreaking; (2) not guilty of larceny; (3) guilty of receiving stolen goods. He was sentenced to serve four years.

This Court reversed that judgment of conviction because we found the evidence before the jury to be legally insufficient to sustain its verdict and a new trial was ordered. *Boblits v. State,* 4 Md. App. 534. Prior to the beginning of the new trial, appellant's counsel filed a motion to dismiss the indictment on the ground that the second trial would place the appellant twice in jeopardy for the same offense. The lower court denied the motion and the appellant was tried before a jury on the single charge of receiving stolen goods, on which charge he had

been convicted in the first trial. A verdict of guilty was returned and appellant was, again, sentenced to serve four years.

I

In this appeal, he contends that the lower court committed reversible error in denying his motion to dismiss the indictment. It is argued that the appellant was placed twice in jeopardy as a result of his second trial, and this is so, it is asserted, whether we adopt the common law admonition against double jeopardy or accept the appellant's contention that the Fifth Amendment mandate of the United States Constitution against double jeopardy is applicable to the States through the Fourteenth Amendment. After carefully considering the appellant's argument, we conclude that impermissible double jeopardy did not attach, under the circumstances of this case, irrespective of the channel through which the doctrine of double jeopardy might be available to him.

Until the recent decision of the Supreme Court of the United States in *Benton v. Maryland,* 395 U. S. 784, 89 Sup. Ct. 2056, 23 L.Ed.2d 707 (1969), it was the well established law of this State that "the rule of double jeopardy is not a constitutional right but exists here as a matter of common law. *Robb v. State,* 190 Md. 641, 60 A. 2d 211 (1948) ; *Ruckle v. State,* 230 Md. 580, 187 A. 2d 836 (1963). The double jeopardy protection of the Fifth Amendment is not transmitted to the States through the Fourteenth Amendment. *Wampler v. Warden,* 231 Md. 639, 191 A. 2d 594 (1963) ; *Nixon v. Director,* 1 Md. App. 14, 226 A. 2d 352 (1967)." See *Hartley v. State,* 4 Md. App. 450, 457.

In *Benton,* the Supreme Court reversed "the landmark case of *Palko v. Connecticut,* 302 U. S. 319," which had been the cornerstone of the Maryland Courts' view that the double jeopardy doctrine came to us through the common law since, according to *Palko,* "Federal double jeopardy standards were not applicable against the States." In *Benton,* the petitioner was found guilty of burglary

and not guilty of larceny at his first trial. While his appeal to the Court of Appeals was pending, he elected to have his indictment declared invalid under *Schowgurow v. State*, 240 Md. 121. Thereafter, a new indictment charging both burglary and larceny was returned and at his second trial he was found guilty of both burglary and larceny. In reversing *Palko*, as well as the holding of this Court in *Benton v. State*, 1 Md. App. 647, the Supreme Court, speaking through Mr. Justice Thurgood Marshall, concluded:

> "On the merits, we hold that the Double Jeopardy Clause of the Fifth Amendment is applicable to the States through the Fourteenth Amendment and we reverse petitioner's conviction of larceny."

It is apparent, therefore, that Federal Constitutional standards of double jeopardy now are available to and govern the rights of an accused in this State. But the appellant in the case at bar can find no comfort or solace in this newly found constitutional aid, even assuming that *Benton* is to be retroactively applied, which we here expressly do not decide, for the stricture imposed by the Supreme Court in *Benton* is against the retrial of an accused who has previously been acquitted of the identical charge. Here, the appellant was retried, after error had been found by this Court in his first trial, on the identical charge upon which he had been found guilty in the first trial and there is no mandate in *Benton* against the second trial of the appellant under the circumstances in which he was here tried.

We are of the opinion that the principles enunciated by the Court of Appeals in *Gray v. State*, 254 Md. ⎯⎯, govern our approach to the appellant's contention that his double jeopardy rights were infringed. In *Gray v. State*, 4 Md. App. 155, as here, this Court reversed Gray's conviction by the lower court on the ground that the evidence was legally insufficient to sustain his conviction of armed robbery and remanded the case for a new trial.

The new trial was ordered, notwithstanding Gray's vigorous argument that the reversal of his judgment of conviction should not be accompanied by a remand order for a new trial. The Court of Appeals granted certiorari and, after reviewing in detail the appropriate authorities, Chief Judge Hall Hammond, speaking for the Court, articulated the following rule:

> "We conclude that the practice of remanding for a new trial after reversal for insufficiency of the evidence rather than remanding for entry of a judgment of acquittal, is permissible. We perceive, however, some judicial tendency or trend towards recognition of the logic of appellate direction for the entry of a judgment of acquittal if the state fails to prove its case in the trial court."
>
> * * *
>
> "We conclude that if the record before the Court of Special Appeals indicates that additional probative evidence of guilt can be adduced by the State at another trial necessitated by the insufficiency of the evidence, a new trial should be awarded after a reversal if the interests of justice appear to require it. If the record indicates that no additional probative evidence can be so adduced, the entry of a judgment of acquittal should be directed. If the Court of Special Appeals cannot determine from the record whether or not additional probative evidence can be produced on a retrial, and the interests of justice appear to require it, the Court should vacate the judgment and remand the case with directions to the trial court (a) to hold a new trial if the State within a specified time can satisfy the court that it can produce additional probative evidence, or (b) to enter a judgment of acquittal if the State cannot preliminarily so satisfy the court."

In reversing Boblits' original conviction for receiving stolen goods, on the ground that the evidence before the jury was legally insufficient to sustain its verdict, we did not explicate our reasons for ordering a new trial. See *Boblits v. State, supra.* It is evident, however, that we were of the opinion that a new trial should be awarded since the "interests of justice" appeared to require it. On the record before us in Boblits' appeal from his first trial, it was apparent that the State had been precluded from producing evidence crucial to the proof of its case by the refusal of the appellant's wife to testify against him. It was equally apparent that if the wife's testimony were available to the State (as it was in the second trial) such testimony would constitute "additional probative evidence of [the appellant's] guilt" which could "be adduced by the State at another trial necessitated by the insufficiency of the evidence" at his first trial. We were of the opinion then, and we are of the opinion now, that the "security of the community," as contrasted to the rights of the appellant, dictated our conclusion that the State should be afforded an opportunity to produce additional probative evidence of appellant's guilt. See *People v. Brown,* 241 N.E.2d 653 (1968). Accordingly, we cannot subscribe to the appellant's contention in this appeal that either his constitutional or common law rights against being placed twice in jeopardy were violated by the lower court's refusal to grant his motion to dismiss the indictment.

## II

We find no merit in the appellant's second contention that the doctrine of collateral estoppel precluded the State from introducing evidence of housebreaking and larceny since these were crimes of which he had been previously acquitted. That the goods unlawfully received have been "stolen" is a necessary element in the crime of receiving stolen goods; evidence that they were stolen as a result of larceny or housebreaking was not only relevant but essential to the State's case. The fact that

a jury in a previous trial found that the appellant did not steal the goods does not estop or preclude the State from introducing evidence in the second trial that the goods unlawfully received by the appellant had been stolen. In fact, such evidence was a prerequisite to their finding the appellant guilty of receiving stolen goods. The cases cited by the appellant on this issue are not, in our opinion, apposite.

### III

Appellant next contends that his motion for judgment of acquittal should have been granted since he was convicted of the felony (rather than the misdemeanor) of receiving stolen goods and there was no proof that the stolen goods received by him were valued at "one hundred dollars or upward" as required by Md. Code, Art. 27, § 466. We disagree. Claude H. Wickers, owner of a sizeable, rare coin collection, testified that he returned to his apartment late one afternoon and found that the safe in which the coins were kept had been broken open and the coin collection "was virtually all gone except for some that was strewn around the floor." He was asked "to give the value of the coins that were taken" and he replied, "It was $6800." Although the police apparently recovered a "bag of coins," only four coins from the collection were permitted by the lower court to be introduced into evidence as State exhibits. No specific value of the individual coins was adduced by the State and it is the appellant's contention that this constitutes a fatal deficiency in the proof of the State's case.

The value of the stolen coins received was a question of fact to be determined, in this instance, by the jury. By finding the appellant guilty, it obviously found as a fact that the stolen goods received had a value of "one hundred dollars or upwards." Unless there was no evidence to support the finding of fact, this Court cannot interfere with the jury's fact finding process. *Rhodes v. State,* 219 Md. 279, 282; *Chittum v. State,* 1 Md. App. 205, 208. We think there was evidence from which the

jury, inferentially, could properly find as a fact that the goods received by appellant had a value in excess of that required by the statute. In addition to the testimony of the owner that the collection had a total value of $6800, there was the following testimony by the appellant's former wife:

"Q. Did there come a time when you saw any coins in your home?

A. Yes. Mr. Boblits brought a bag, a large bag —it was a bowling bag—he brought it into my home, our home at the time.

Q. And what, if anything, did he do with it?

A. He put it up in the closet. I asked him what it was. He told me it was none of my business.

There came a time he brought the bag down to the living room. We both sat on the floor. He opened it up. He tore out several of the coins in little packets. They were numbered with numbers on them. They had marks on them on the little packets. The majority of them Mr. Boblits tore out of the packets. It seems like he was trying to sort them.

Q. Was there any conversation between you and he about where they came from?

\* \* \*

A. He stated it was none of my business, but for my information they came from a Mr. Wickers.

\* \* \*

Q. Did there ever come a time when you had a conversation with Frank about a Mr. Wickers and the coins?

A. Well, I have had several conversations with Mr. Boblits. Mr. Wickers has been to our home several times. My husband has given Mr. Wickers money. He gave him $500.

Q. Was there any discussion of the coins at that time?

A. Yes. Mr. Boblits stated to Mr. Wickers that he would try and retrieve the rest of the coins for him as he was trying to make restitution."

On this evidence, we cannot say that the jury was unjustified in concluding that the stolen coins received by the appellant had a value of one hundred dollars or upwards.

## IV

Appellant next contends that the lower court committed prejudicial error in refusing to instruct the jury, as requested by him, "on the lesser included offense of a misdemeanor; that is, receiving stolen property, which had a value of less than one hundred dollars." The lower court instructed the jury as follows:

"The Court would instruct you in this case that you must determine the question of whether or not the goods that he received are in the value in excess of $200. And the Court's only recollection of the evidence is that which I have pointed out to you. If you determine that he did not receive coins of a value of in excess of $200, your verdict would be for the defendant or not guilty. If you feel from the evidence in this case that the goods received were in excess of $200, then you may find for the State or find him guilty."

Md. Code, Art. 27, § 466 provides that it shall be a felony if stolen goods having a "value of one hundred dollars or upwards" are unlawfully received and § 467 designates the crime as a misdemeanor if the goods "are under the value of one hundred dollars." It is apparent, therefore, that it was error to instruct the jury that it must find that appellant had unlawfully received stolen goods of a value in excess of two hundred dollars as a condition to finding him guilty. On the other hand, it is equally apparent that the error redounded to appellant's benefit since the instruction set a higher standard than

that required by the statute. Although we think it would have been the better practice to have instructed the jury with respect to the requirements of both § 466 and § 467, we find that, under the circumstances, the error can only be considered as harmless and not prejudicial to the appellant. *Connor v. State,* 225 Md. 543; *Brown v. State,* 203 Md. 126.

V

Appellant finally contends that it was reversible error to permit appellant's former wife to testify that "her former husband was unemployed; out of work for three years; he had brutally beat her; she had obtained a divorce on the grounds of adultery and that he was involved with another woman" came in without objection and testimony relating to the divorce was elicited by appellant's counsel. Under Md. Rule 1085, these questions are not properly before us. The admission of the other testimony complained of comes within the principle that the overall direction of the trial is within the sound discretion of the trial judge. Unless it is clear from the record that the lower court has abused its discretion to the prejudice of the accused, its rulings on the admission of evidence cannot form the basis of a reversal. *Tomolillo v. State,* 4 Md. App. 711. An accused is entitled to a fair trial, not a perfect trial. In this instance, we think the appellant received a fair trial.

*Judgment affirmed.*