# JAMES EARL McGHEE *v.* STATE OF MARYLAND

[No. 293, September Term, 1969.]

*Decided June 23, 1970.*

The cause was argued before ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Joel H. Pachino* for appellant.

*John J. Garrity, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Stephen G. Gilden, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

Appellant was convicted in a jury trial on separate charges of assault with intent to murder two Baltimore City police officers and separate charges of assault upon the police officers (Md. Code, Art. 27, § 11B). Concurrent sentences totaling fifteen years were imposed.

The convictions arose out of a series of events which followed the attempt of Sgt. Malcolm Mayo, who was operating an unmarked police car, to apprehend the appellant who was driving an automobile exhibiting tags which appeared on the officer's "vehicle hot sheet", indicating that the car had been stolen. Instead of complying with the officer's signal to "pull over", appellant "took off" at high speed, abandoned his car several blocks later, and ran. Sgt. Mayo gave chase and by this time was joined by Officer William Roberson and a Police Officer Trainee, David Schwab. The chase continued for several blocks during which Officer Roberson fired several shots at the appellant. While searching a yard or areaway, they discovered the appellant who fired his gun at the two officers from a distance of approximately twenty-five feet. Immediately thereafter, Sgt. Mayo "went toward the subject and he leveled his gun at my chest and squeezed the trigger, but the gun didn't go off. It just went 'click'." Both officers then fired several shots at appellant, one of which apparently hit him, but appellant managed to escape.

Police Officer Trainee Schwab, who had been separated from the other officers, later found appellant hiding under an automobile, ordered him to come out and when directed to "turn around and put your hands on the wall" the appellant, according to Schwab, said: "* * * you might as well shoot me. I have already been shot. You might as well kill me." Appellant then proceeded to run away and in doing so "reached his left hand into his rear pocket and turned around, and pointed toward me" what the officer believed was a pistol. According to the officer: "I pulled my revolver out and fired two shots at him." Appellant, nevertheless, made good his escape and was not apprehended until twelve days later.

Appellant first contends that the State, by failing to prove the theft of the vehicle driven by appellant, did not establish that Sgt. Mayo had probable cause to attempt to effect the arrest of appellant, and, accordingly, he had a legal right to escape and, in doing so, to assault and fire upon the officers. This argument is without substance. The Court of Appeals of Maryland and this Court have consistently held that information placed on a "lookout list" prepared by the police organization of which the arresting officer is a part may serve as the basis for probable cause to arrest. *Johnson v. State*, 238 Md. 528; *Duckett v. State*, 3 Md. App. 563, 571-572; *Darby v. State*, 3 Md. App. 407, 416. Here, the license number affixed to the car driven by appellant appeared on the list of reported stolen cars which, according to the officer, had been routinely furnished him by the police department. This constituted ample probable cause for the appellant's arrest.

Nor do we find any merit in the contention that "reversal is required since damaging confession of appellant was not preceded by a showing by the State that the required *Miranda* warning was given the appellant." It appears that after appellant's ultimate apprehension, Sgt. Mayo, Officer Roberson and Officer Schwab went to his cell and, according to Sgt. Mayo: "* * * at this time I went up to the cellblock, and I asked him if he knew who I was. He stated, " 'Yes. And the next time I won't miss you'." This testimony came in without objection and, therefore, is not properly before us. Md. Rule 1085. In any event, it is apparent that it was not the type of custodial interrogation proscribed by *Miranda v. Arizona*, 384 U. S. 436. See *Bazzell v. State*, 6 Md. App. 194; *Howell v. State*, 5 Md. App. 337.

Appellant next complains that the trial judge erred in permitting him personally to conduct the cross-examination of Sgt. Mayo. The record indicates that appellant's counsel first cross-examined Sgt. Mayo and it was only after the appellant, himself, had addressed an extended and impassioned plea to the court that the trial judge re-

lented and reluctantly permitted appellant personally to continue the cross-examination which had been originally undertaken by his counsel. The trial judge exhibited great patience and tolerance with respect to appellant's conduct at trial and, bearing in mind that the overall direction of a trial is within the sound discretion of the presiding judge, we find no error nor any harm to the appellant in the course followed by the trial judge. *Boblits v. State,* 7 Md. App. 391, 400.

Appellant next asserts that he was illegally convicted of statutory assault upon Police Officer Trainee Schwab because he was a "police cadet" [1] and not a "police officer" within the meaning of Md. Code, Art. 27, § 11B, which makes it "unlawful for any person to beat, strike or otherwise to assault a [Baltimore City] policeman while the said policeman is acting in his official capacity." [2]

Although referred to at one point in the testimony as a cadet by the Assistant State's Attorney, it is apparent from the evidence that David Schwab was not a cadet but was, in fact, a police officer trainee who had been on the Baltimore City police force for a period of two and one-half months and at the time of the assault was in training at the Police Academy. Section 526 (d) of Chapter 203 of the Laws of Maryland 1966, which established the present organization of the Baltimore City Police Department, provides that " 'police officers' shall mean all those members of the Department having and exercising the powers of police officers, as provided in this subtitle", and Section 528 (a) provides that "all police officers of the Department, including such other members thereof, who may be designated by the Commissioner from time to time to exercise the powers and duties of police officers, shall be peace officers and shall have the same pow-

---

1. A Baltimore City police cadet is an individual between the ages of 18 and 21 years who is not permitted to carry a weapon, does not accompany police officers on their appointed rounds and is not permitted to make arrests as a police officer.

2. Since repealed by Chapter 655 of the Laws of Maryland 1969, effective July 1, 1969.

ers, with respect to criminal matters and the enforcement of the laws related thereto * * *."

Police officer trainees must be 21 years of age or over; they are administered an official oath; they are given a period of training at the Police Academy; and they are designated by the Police Commissioner, pursuant to his statutory authority, to exercise the powers and duties of police officers. In this legislative and factual framework, it is apparent that an assault upon Police Officer Trainee Schwab was a violation of Md. Code, Art. 27, § 11B.

Nor do we find any merit in the contention that there was no proof of an assault upon him, for he testified that while he was endeavoring to apprehend appellant, the appellant pointed at the officer "what appeared to be a pistol", causing the officer to fire twice at him as he made his escape. It is true that historically some authorities held to the view that a criminal assault only occurred where the assailant was shown to have an actual present intention to inflict a battery. We agree, however, with the conclusion reached by Clark and Marshall, *Law of Crimes*, § 10.15 (at page 647) that "[t]he better opinion, * * *, is against this view, and to the effect that if a person presents a gun at another, or threatens him with a stick or other weapon, and thereby reasonably puts him in fear and causes him to act on the defensive, or to retreat, there is an assault, whether there is any actual intention to injure or not." Under the circumstances here, we are of the opinion that there was sufficient evidence from which the jury could find, beyond a reasonable doubt, that the appellant committed an assault upon the officer.

Appellant further contends that the evidence was legally insufficient to sustain his conviction of assaulting Officer Roberson with intent to murder him. We disagree. Officer Roberson testified that upon being confronted by the officers behind a fence, appellant "jumped up, and when he jumped up, he fired a shot at us." Although he could not state with specificity where the shot was directed, he did state that "the gun was pointed at us." Im-

mediately after the shot was fired, appellant aimed his gun at Sgt. Mayo's chest but the gun did not fire when appellant pulled the trigger. Officer Roberson's testimony further disclosed that when appellant saw the three officers after his capture, he stated: "Next time I'll make sure I get you."

Under these circumstances we find that there was sufficient evidence from which the jury could infer, beyond a reasonable doubt, that when appellant "pointed" the gun at Officer Roberson and fired, he did so with an intent either to murder him or to inflict grievous bodily harm. Either finding would be sufficient to sustain the conviction. See *Perez v. State,* 7 Md. App. 452; *Morgan v. State,* 4 Md. App. 351.

Appellant's final contention that the convictions of "assault on a police officer" should have merged with the convictions of assault with intent to murder was not raised below and is not properly before this Court for review. See Md. Rule 1085 and *Brown v. State,* 8 Md. App. 462, 468.

*Judgments affirmed.*