## THURMAN ALEXANDER MOORE v. STATE OF MARYLAND

[No. 247, September Term, 1974.]

*Decided November 22, 1974.*

The cause was argued before THOMPSON, GILBERT and DAVIDSON, JJ.

*Richard B. Talkin* for appellant.

*Bernard A. Raum, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Warren B. Duckett, Jr., State's Attorney for Anne Arundel County,* and *Richard J. Kinlein, State's Attorney for Howard County,* on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court.

A jury in the Circuit Court for Anne Arundel County, presided over by Judge Matthew S. Evans, convicted Thurman Alexander Moore of rape (Md. Ann. Code art. 27, § 461) and kidnapping of a child under the age of sixteen years (Md. Ann. Code art. 27, § 338).

Briefly stated, the factual situation out of which the appellant's convictions arose began at approximately 5 P.M. on April 30, 1973. At that time the prosecutrix, then age eleven, was riding her bicycle in Clarksville, Howard County,[1] en route to her girlfriend's house. Moore stopped the automobile that he was operating and asked the young victim for directions to Ellicott City. After she had told him the route, he suggested that she get into the car and show him the way, and that he would then return her to Clarksville. When she demurred on the ground that she was not allowed to enter motor vehicles of strange persons, Moore told her to get into the car or he would "slit her throat". The prosecutrix entered the vehicle and was driven to the vicinity of an abandoned farmhouse located off of a dirt road. The prosecutrix and Moore exited the car, and she walked in front of him toward some bushes. Michael H. Schultheis and his girlfriend, who were looking for property in Howard County, happened to be at the location where Moore parked his car. When Moore and the prosecutrix walked past Schultheis's car, Moore "sort of waved" at Schultheis, and the prosecutrix looked "scared". Schultheis's attention was focused on Moore and the girl because Moore is a six foot tall black man and the prosecutrix a small,

---

1. This case originated in Howard County. Following indictment by the grand jury for that county, the case was removed at appellant's request to Anne Arundel County.

eleven-year old white child. After Moore and the prosecutrix had disappeared into the bushes, Schultheis sent his girlfriend to seek the police, and he flagged a truck and explained what he suspected. The driver of the truck parked in such a manner as to block egress of Moore's vehicle. The police arrived as Moore and the prosecutrix were exiting the bushes. In response to a policeman's question to the prosecutrix as to whether everything was all right, she said "No", and related to the officer that she had been ravished.

## I.

Appellant argues that:

> "The evidence produced was not sufficient to support a finding of guilt under Article 27, Section 338 of the Annotated Code of Maryland and the lower court was in error when it failed to grant appellant's motion for a judgment of acquittal as to the charge of kidnapping and when it improperly instructed the jury as to the nature of the kidnapping charge."

A short history of the Maryland kidnapping law is necessary to a decision on this contention. IV W. Blackstone, *Commentaries*, * 219 states:

> " . . . *[K]idnapping*, being the forcible abduction or stealing away of a man, woman, or child from their own country and sending them into another, was capital by the Jewish law; — 'He that stealeth a man, and selleth him, or if he be found in his hand, he shall surely be put to death.' So, likewise, in the civil law the offense of spiriting away and stealing men and children, which was called *plagium* and the offenders *plagiarii,* was punished with death. This is unquestionably a very heinous crime, as it robs the king of his subjects, banishes a man from his country, and may in its consequences be productive of the most cruel and disagreeable hardships; therefore the common law of England

has punished it with fine, imprisonment, and pillory." (Footnotes omitted).

Article 5 of the Maryland Declaration of Rights (1867) provides that the "[I]nhabitants of Maryland are entitled to the Common Law of England" as it existed on July 4, 1776 whenever the common law has not been revised, amended, or repealed by the legislature.

The first alteration in the common law definition of kidnapping occurred as the result of the enactment of ch. 138, § 4 [1809] Laws of Maryland. That law provided:

> "10th. Every person, his or her counsellors, aiders or abettors, who shall be duly convicted of the crime of kidnapping, and forcibly or fraudulently carrying, or causing to be carried out of this state, any free person, or any person entitled to freedom at or after a certain age, period or contingency, or of arresting and imprisoning any free person, or any person entitled to freedom at or after a certain age, period or contingency, knowing such person to be free, or entitled to their freedom, as aforesaid, with intent to have such person carried out of this state, shall be sentenced to undergo a confinement in the . . . penitentiary . . . for . . . not less than two nor more than ten years. . . ."

Subsequent changes thereafter occurred.[2] Section 337 as it appeared at the time of the offense provided:

> "Every person, his counsellors, aiders or abettors, who shall be convicted of the crime of kidnapping and forcibly or fraudulently carrying or causing to be carried out of or within this State any person, except in the case of a minor,[3] by a parent thereof,

2. *See,* Md. Ann. Code, 1888, § 154; 1904, § 259; 1912, § 283; 1924, § 316; 1939, § 385; 1951, § 403; and Laws of Maryland, 1809, ch. 138, § 4; 1867, ch. 179; 1910, ch. 46, p. 92; 1933, ch. 589, § 316; 1935, ch. 283, § 316; 1949, ch. 4, § 385.

3. By Laws 1973, ch. 651, § 13, the word "minor" was deleted, and the phrase "person under eighteen years of age" was substituted therefor.

with intent to have such person carried out of or within this State, or with the intent to have such person concealed within the State or without the State, shall be guilty of a felony and shall be sentenced to death or to the penitentiary for not more than thirty years, in the discretion of the court."

In 1819 the legislature enacted a special statute relative to children under the age of sixteen years. At that time the General Assembly passed ch. 132, entitled "An Act to punish the offense of Kidnapping White Children". The statute provided:

"*Be it enacted, by the General Assembly of Maryland,* That every person, his or her counsellors, aiders or abettors, who shall be duly convicted of kidnapping, and forcibly or fraudulently stealing, taking or carrying away, any white child or children under the age of sixteen years, shall be sentenced to undergo a confinement in the penitentiary for a period of time not less than five years, nor more than twelve years, there to be treated as the law directs."

The racial aspect of the statute was deleted in 1888 [4] so that the law proscribed the "taking or carrying away", by means of force or fraud, *any* child.

Thereafter, the statute underwent a series of amendments [5] which dealt with the prescribed penalty only. Laws 1935, ch. 284, added the death penalty for violation thereof.[6]

Md. Ann. Code art. 27, § 338, the present successor to Laws 1819, ch. 132, provides:

---

4. Laws of Maryland, art. 27, § 155.

5. *See,* Md. Ann. Code, 1888, § 155; 1904, § 260; 1912, § 284; 1924, § 317; 1939, § 386; 1951, § 404; Laws of Maryland, 1819, ch. 132; 1910, ch. 46, p. 92; 1933, ch. 589, § 317; 1935, ch. 283, § 317; 1949, ch. 4, § 386.

6. It would appear that the death penalty was added as a reaction to the Lindberg kidnap-murder case of 1932.

"Every person, his counsellors, aiders or abettors, who shall be convicted of kidnapping and forcibly or fraudulently stealing, taking or carrying away any child under the age of sixteen years, except by a parent thereof, shall be guilty of a felony and shall be sentenced to death or to the penitentiary for not more than thirty years, in the discretion of the court."

Because § 338 does not contain the language found in § 337, *viz.*, "carrying or causing to be carried out of or within this State," appellant postulates that the common law, as set forth above, in IV W. Blackstone, *Commentaries* * 219, has not been changed, and that insofar as the kidnapping of a child under the age of sixteen is concerned, it is mandatory that the prosecution show that the victim was removed to another country. Moore argues that the failure to include the language "carried out of or within the State", in § 338, is a legislative oversight [7] requiring reversal of the conviction. We disagree.

When the General Assembly in 1819 enacted ch. 132 it certainly was cognizant of its passage of the 1809 modification of common law kidnapping. The 1809 legislative modification changed the requirement that a person be shown to have been removed from the country to a showing that he was "carried out of this state". Significantly, removal from the State was not an element of the kidnapping of a child if the prosecution was instituted under ch. 132, [1819] Laws of Maryland. A cardinal principle of statutory construction is that if the legislature has "intimated its will, however indirectly, that will should be recognized and obeyed." *Johnson v. United States,* 163 F. 30, 32 (C.A.1, 1908). *See also Brocker Mfg. v. Mashburn,* 17 Md. App. 327, 301 A. 2d 501 (1973). We think that the legislative intent was to create a special statute for the protection of children and to proscribe the forcible or fraudulent taking or

---

7. Insofar as we have been able to determine, no Maryland case has construed § 338 because prosecutions are generally brought under § 337. It is difficult to fathom why the State did not charge a violation of § 337 in the instant case.

carrying away of a child from his or her parent, custodian or guardian regardless of whether the child was asported beyond the territorial confines of Maryland.

Although the legislature subsequently amended § 337 so as to embrace within the crime of kidnapping not only interstate, but intrastate forcible or fraudulent asportation of persons, it was not necessary to amend § 338 in a similar fashion. No amendment to § 338 was needed because the original enactment in 1819 of ch. 132, as we construe it, made it unlawful for anyone in this State to take by force or fraud any child under the age of sixteen years and to transport that child to any place within or without the State. Thus it is not necessary for the State to prove, under § 338, that the child was transported outside the geographical boundaries of Maryland. If the State evidences that the child was taken by force or fraud and then transported, by the accused, such a showing is sufficient to sustain the charge.

Moore further argues that the State did not demonstrate the distance that the victim was transported. The record does reveal, however, that the child was forced by threat of serious bodily harm to enter Moore's vehicle and was then driven from Clarksville to another location. Appellant's contention is without merit. "It is the fact of asportation and not the distance which is controlling." R. Perkins, *Criminal Law* § 7 at 177 (2d ed. 1953). In *State v. Ayres*, 198 Kansas 467, 426 P. 2d 21 (1967), the Kansas Court held that a woman who was compelled at the point of a gun to leave her companion's car and enter the vehicle of an abductor was kidnapped even though the actual distance travelled was eleven feet.

Appellant also declares that § 338 and its ancestors are in derogation of the common law and must be strictly construed. We have so construed it. The purpose of § 338, as set forth above, is transpicuous and "no rule of construction precludes giving a natural meaning" to this legislation. Section 338 must, in the light of its history, be interpreted to effectuate its purpose. *Isbrandtsen Co. v. Johnson*, 343 U. S. 779, 72 S. Ct. 1011, 96 L.Ed.2d 1294 (1952).

We hold that Judge Evans did not err in refusing to

instruct the jury that in order for appellant to be convicted of violating § 338, the State was required to prove that the victim had been "carried out of the country."

## II.

Moore next claims that the kidnapping and rape charges merged. He propounds the view that his act of "transporting the girl [was] for one reason and that was the furtherance of rape or other sexual activity and not for the purpose of kidnapping." To bolster his argument, Moore relies upon *People v. Levy*, 15 N.Y.2d 159, 256 N.Y.S.2d 793, 204 N.E.2d 842 (1965). In that case the court reversed a kidnapping conviction on the ground that the charge merged with a robbery conviction. The victims had been forced at gun point into the accused's vehicle which was driven aimlessly for twenty-seven blocks. The time consumed by the drive was twenty minutes. During that period the victims were robbed of jewelry and wallet. The Court of Appeals of New York held that the restraint on the victims was an integral part of the robbery. Similar holdings are found in *People v. Lombardi*, 20 N.Y.2d 266, 282 N.Y.S.2d 519, 229 N.E.2d 206 (1967) and *People v. King*, 26 A.D.2d 832, 273 N.Y.S.2d 925 (1966). This Court, speaking through Judge Thompson in *Rice v. State*, 9 Md. App. 552, 267 A. 2d 261 (1970), rejected the New York rule on the basis of its conflict with "a majority of the courts, 17 A.L.R.2d 1003 and . . . with the Maryland doctrine of merger . . ." as set forth in *Stewart v. State*, 4 Md. App. 565, 569, 244 A. 2d 452 (1968), wherein we said:

> "The true test of merger under the modern doctrine is whether one crime necessarily involves the other, *viz.*, when the facts necessary to prove the lesser offense are essential ingredients in establishing the greater offense, the lesser offense is merged into the greater offense."

We decline to depart from our holding in *Rice*, and we again specifically reject the New York rule.

In the instant case the asportation of the victim, after

appellant's having forced her into the vehicle, established the crime of kidnapping. It was a separate and distinct offense from the rape. The facts necessary to show the kidnapping were not "essential ingredients" of the rape. There was no merger, and the trial judge was correct in denying a requested instruction relative thereto. *Hunt v. State*, 12 Md. App. 286, 278 A. 2d 637 (1971).

## III.

Next, Moore perceives error because Judge Evans "refused to instruct the jury that their function was not that of seeking retribution."

This alleged error arises as a result of the rebuttal argument to the jury by the State's Attorney. He said:

> "The State of Maryland is everybody . . . you, is everybody . . . [the prosecutrix], and the purpose of the Criminal Law you requested . . . don't confuse this case with exact retribution, but don't consider it the protection of the victim, that's exactly the purpose that we're here. We live in a civilized society and one of the things that we give up is our right to take personal retribution, and we pass it on to the State, the State being all of us. When the State fails to exact sufficient restitution or retribution and the State fails to protect the victim of a crime, then we all lose faith and confidence in the system of administration of criminal justice."

No objection was interposed at that time, but after the trial judge had completed his advisory instruction, appellant's counsel, at the bench, stated:

> " . . . Mr. Kinlein [the State's Attorney] said in his final argument and I didn't object because I thought I'd ask the Court for an additional instruction about retribution. I think that the purpose of the jury ought to be explained. It's not retribution, it's to find facts."

The trial judge declined to give an additional instruction

on the ground that he had advised the jury that argument of counsel was just that, argument and not evidence. As we read the transcript of the State's Attorney's rebuttal argument, we are led to the conclusion that he was articulating the growth of criminal law. He was endeavoring to explain to the jury that when men organized into society they gave up certain things that they had previously reserved for themselves. One of the things that they surrendered to society was the seeking of personal retribution for an act done to the person or his relatives. While we think the argument of the State's Attorney to be an inarticulate explanation of the historical background of criminal law, and we further think that it would have been better had the trial judge granted the appellant's request for a clarifying instruction, we, nevertheless, do not perceive in this case reversible error because the judge refused to give that instruction. *See Wilhelm v. State*, 272 Md. 404, 326 A. 2d 707 (1974) wherein the Court of Appeals declined to upset a conviction on the basis of a prosecutor's argument that the jury had an opportunity to do something to stop crime. The Court said that it must give due deference to the conclusion reached by the trial judge who "heard the actual remarks — in the context in which they were made, in the trial arena — and who found no prejudice. The alleged improper remark — at best an introduction to a possible invocation of 'law and order,' or the commencement of an exhortation unto the jury 'to do their duty,' or the inception of an appeal for law enforcement — was but one sentence in the extensive proceedings, singularly made and unrepeated." We note that Judge Evans advised the jury, "It is your function to decide upon the truth of the testimony as given by the various witnesses . . . . *That is your sole responsibility. . . .*" (Emphasis supplied).

The judge further instructed the jury that its function was that of judge of the fact and law.[8] We observe that the judge's instructions occurred posteriorly to the argument of counsel, and they elucidated the role of the jury. The instruction made clear to the jury their role in the case. We

---

8. Md. Const. art. 15, § 5.

have no reason to believe that the jury did not heed the trial judge's instructions, nor that the talesmen disobeyed their oath to "well and truly try and a true deliverance make . . . and a true verdict give according to the evidence." [9] An accused is entitled to a fair trial, not a perfect one. *State v. Babb*, 258 Md. 547, 552, 267 A. 2d 190 (1970); *Boblits v. State*, 7 Md. App. 391, 400, 256 A. 2d 187 (1969).

In the light of the overwhelming testimony of the culpability of the accused as presented in this case, the trial judge's declination to further instruct the jury, if error, was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U. S. 18, 87 S. Ct. 824, 17 L.Ed.2d 705 (1967); *Folk v. State*, 11 Md. App. 508, 275 A. 2d 184 (1971).

## IV.

Appellant next contends that the evidence was insufficient to support the conviction of rape.

The victim testified that appellant had lowered her jeans and undergarments below her knees, and that he put his penis in her vagina; she felt it in her. The appellant here, and in the trial court, seems to rely heavily upon the fact that the victim testified that she did not *see* the penetration occur. We know of no rule of law that requires a rape victim to observe the entry of the male organ into her body. There was also testimony in this case that the young victim's undergarments exhibited a "dark, reddish color stain on the underpants . . . in the vicinity of the crotch region." [10] Moreover, the victim's testimony, standing alone, if believed, is sufficient to sustain the conviction. *Estep v. State*, 14 Md. App. 53, 286 A. 2d 187 (1972); *Crenshaw v. State*, 13 Md. App. 361, 283 A. 2d 423 (1971); *Williams v. State*, 11 Md. App. 350, 274 A. 2d 403 (1971); *Gunn v. State*, 4 Md. App. 379, 243 A. 2d 15 (1968); *Lucas v. State*, 2 Md. App. 590, 235 A. 2d 780 (1967).

---

**9.** Petit juror's oath as administered in a criminal cause in the Circuit Court for Anne Arundel County.

**10.** The victim testified that she had menstruated neither before nor subsequent to the rape. Nor had she injured herself in alighting from her bicycle.

### V.

Lastly, appellant argues that the trial court erred when it admitted into evidence, over objection, a knife seized from the appellant's car.

At the time the appellant was apprehended he was approximately ninety yards from his parked motor vehicle. The vehicle was searched and a knife was found in the glove compartment. The knife, as we have noted, was admitted into evidence over objection. Appellant asserts that the admission of the knife was improper because it was the fruit of an illegal search. Furthermore, appellant says, it cannot be argued that the search was incident to an arrest. *Chimel v. California,* 395 U. S. 752, 89 S. Ct. 2034, 23 L.Ed.2d 685 (1969); *Howell v. State,* 271 Md. 378, 318 A. 2d 189 (1974). Officer Freund, of the Howard County Police Department, testified that he discovered the knife in the course of an "inventory" of the contents of the appellant's motor vehicle, but, on cross-examination, he said that he found the knife while he was "searching" the car. No matter how the officer classified his actions, he was processing the seized vehicle. It is indubitable that the motor vehicle was an instrumentality of the crime of kidnapping. Patently, the vehicle had been used for the asportation of the youthful victim. It was parked near an abandoned house, and it was visible to anyone in the area. There was no contention that the police had trespassed upon real property of appellant. In fact, there is a clear inference that appellant was a trespasser upon property of another, although the identity of that person is not revealed by the record. Knowing that the vehicle had been used in the kidnapping, the police had not only the right to seize it, but the duty to do so on the ground that it was evidence of the kidnapping. *Nasiriddin v. State,* 16 Md. App. 479, 298 A. 2d 490 (1973).

Once the vehicle was "legally in the hands of the police they had the right to process it to establish the *corpus delecti.*" *Nasiriddin v. State, supra.* Just as the *Nasiriddin* automobile was the "striking vehicle" in a "hit and run" case, so the car in the instant case was the "asporting vehicle". The police could have examined the car for latent

fingerprints of the victim. Although a search of a vehicle under certain circumstances may be constitutionally proscribed, *see e.g., Coolidge v. New Hampshire,* 403 U. S. 443, 91 S. Ct. 2022, 29 L.Ed.2d 564 (1971) [11] and *Howell v. State, supra,* [12] such prohibition does not exist where, as here, the vehicle itself is itself an integral part of the crime, *viz.,* the element of "carrying away".

W. Ringel, *Searches & Seizures, Arrests and Confessions* § 291.02 at 380 (1972) states:

> "Although in *Harris v. U.S.,* 390 US 234 [88 S.Ct. 992, 19 L.Ed.2d 1067 (1968)] the Supreme Court did not reach the issue as to whether a vehicle seized as evidence of or as an instrumentality of a crime may be searched without a warrant, there is authority for such a warrantless search. And this is true even though there is no applicable forfeiture statute. *Abrams v. State,* 223 Ga. 216, 154 SE2d 443 [(1967)]; *State v. McCoy,* [249 Or. 160], 437 P.2d 734 [(1968)]; *People v. Chapman,* 67 Cal. Rptr. 601 [(1968)]. Logic commends such authority."

J. Cook, *Constitutional Rights of the Accused: Pre-Trial Rights,* § 61 at 379 (1972) declares that Harris indicates that:

> " . . . [I]t is not essential that there be an explicit statutory authorization for the seizure of the vehicle, by virtue of the particular crime for which the suspect is arrested. Where the car itself is evidence of crime, courts are more likely to permit a warrantless search."

---

**11.** Coolidge v. New Hampshire, *supra,* is distinguishable on its facts. In that case "the police had known for some time of the probable role of the . . . car in the crime. Coolidge was aware that he was a suspect in the . . . murder, but he had been extremely cooperative . . . and there was no indication that he meant to flee. He had already had ample opportunity to destroy any evidence he thought incriminating." 403 U. S., at 460.

**12.** In Howell v. State, *supra,* the search was made on the theory that it was incident to a lawful arrest, Chimel v. California, *supra,* but the Court of Appeals held that the search was without the ambit of Chimel. Although the Howell vehicle seems to have been the "getaway car", the arrest did not occur until three days after the crime. Hence, the reasoning of Coolidge would appear to be dispositive.

*See also* cases cited by Cook at 379 n. 18.

The Court of Appeals in *Johnson v. State*, 238 Md. 528, 209 A. 2d 765 (1965), a rape and kidnapping case, upheld the search of a Cadillac in which the victim was transported. The Court said at 539-40:

> " . . . [T]he automobile, according to the information previously given by [the victim] which the officers had reasonable cause to believe was true, had been used as an instrument in the perpetration of the alleged crime; . . . Where there has been a valid arrest, property found in connection with the arrest which tends to establish the commission of the crime charged may be held by the officers for evidence. *If the arrest is lawful, the seizure is lawful, if the property is of an evidentiary nature. . . . The automobile itself could have been offered in evidence at the trial. Having lawfully seized it, the police had a right to examine it after the seizure for evidence in connection with the crime.*" (Citations omitted). (Emphasis supplied).

The trial court did not err in its ruling relative to the admission of the knife into evidence.

*Judgments affirmed.*